UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
CHINESE AMERICAN CITIZENS ALLIANCE
GREATER NEW YORK, PHILLIP YAN HING
WONG, SIU-LIN LINDA LAM, LUCAS LIU,
GEORGE LEE, and XUHUI NI, each individually
and on behalf of all other Asian-Americans similarly
situated,

        Plaintiffs,

    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
CITY OF NEW YORK, RICHARD A. CARRANZA, as
Chancellor in his official capacity, BILL DE BLASIO,
as Mayor of the City of New York in his official
capacity, Asst. Principal JASON MARINO, individually
and in his official capacity, Asst. Principal JOHN DOE
No. 2, individually and in his official capacity, School
Safety Officer JOHN DOE No. 3, individually and in his
official capacity, Police Officer JOHN DOE No. 4,
individually and in his official capacity, Police Officer
JOHN DOE No. 5, individually and in his official
capacity, School Safety Officer JOHN DOE No. 6,
individually and in his official capacity, School Safety
Officer JOHN DOE No. 7, individually and in his
official capacity, and School Safety Officer JOHN DOE
No. 8, individually and in his official capacity,

        Defendants.
---------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Case No. 20-cv-8964

## PRELIMINARY STATEMENT

1.  This class action lawsuit, brought by the Chinese American Citizens Alliance

Greater New York ("CACAGNY") and five individual Asian-Americans on behalf of

themselves and others similarly situated, challenges the unconstitutional policies and practices of

Defendants the New York City Department of Education ("DOE"), the City of New York,

Chancellor Richard A. Carranza, and/or Mayor Bill de Blasio, along with the New York City

Police Department ("NYPD"), and the NYPD School Safety Division, as evidenced by the unlawful and unconstitutional actions of their respective employees and agents, and seeks to ensure that the constitutional rights of Asian-Americans to attend and express political speech outside, at, or inside School buildings, Town Halls, and/or other education-related DOE or City public meetings are not unlawfully abridged.

**A.     Chancellor Town Hall Meetings**

2.      As part of the DOE's outreach into New York City communities, the DOE Chancellor, currently Richard A. Carranza, conducts Town Hall meetings in coordination with the meetings of the City's 32 School District Community Education Councils ("CEC"). Indeed, one of the roles of each District CEC is to host a Town Hall meeting with the Chancellor during the school year.[1]

3.      CEC and Town Hall meetings are public and subject to the requirements of the open meetings law—*i.e.*, Article 7 of the New York Public Officers Law.

4.      The primary purpose of these Town Hall meetings is for the DOE Chancellor to engage in dialogue with the school district community—in particular, with school district parents and other community and education stakeholders—around issues relating to the education of the City's 1.1 million school children.

5.      It is not uncommon that before, during, or after Town Hall meetings, parents and/or other community members and stakeholders engage in political speech, including protests, rallies, picketing, and/or displaying signs or posters prior to, during, or following such

---

[1] See New York City Department of Education, "Roles and Responsibilities of Community Education Councils," at https://www.schools.nyc.gov/get-involved/families/education-councils/roles-and-responsibilities-of-education-councils.

meetings, outside and/or inside School buildings, to support or protest the DOE, City, Chancellor, and/or Mayor, or their respective or coordinated actions or policies.[2]

6.      At times, Town Hall meetings can be contentious. On January 16, 2020, for example, the Chancellor scheduled a Town Hall meeting with CEC District 26, at a middle school in Bayside, Queens, and then abruptly left the meeting after several parents angrily confronted him about the issues of sexual assaults and violence occurring at Middle School 158, another District 26 middle school.[3]

7.      In the past, the Chancellor also has attempted to avoid potentially contentious meetings altogether. In February 2020, for example, the DOE took steps to move a March Town Hall meeting scheduled in Chinatown with CEC District 2 to Chelsea to avoid potentially critical Asian protestors. According to sources at the New York Post, Acting Deputy Chancellor (ADC) Adrienne Austin "pushed for a location change" with CEC District 2.[4]

8.      The Asian community's criticisms concerning certain of the DOE, City, Chancellor, and/or Mayor's education policies are not new. In June 2018, for example, following the DOE and City's proposed plans to alter admissions policies to Specialized High Schools,

---

[2] See, e.g., Jenna Bagcal, "Northeast Queens leaders rip Carranza over claim of 'setup' at heated Bayside meeting," www.Qns.com, Jan. 29, 2020, at https://qns.com/2020/01/northeast-queens-leaders-rip-carranza-over-claim-of-setup-at-heated-bayside-meeting/ and Leslie Brody, "New York City Schools Chancellor Apologizes After Heated Exchanges," Wall Street Journal, Jan. 30, 2020, at https://www.wsj.com/articles/new-york-city-schools-chancellor-apologizes-after-heated-exchanges-11580423115, evidencing parents and/or community members engaging in political speech at public DOE meetings with Chancellor Carranza.

[3] See, e.g., Selma Algar, "Outraged parents jeer DOE head Richard Carranza off the stage at Queens town hall meeting," New York Post, Jan. 17, 2020, at https://nypost.com/2020/01/17/outraged-parents-jeer-doe-head-richard-carranza-off-the-stage-at-queens-town-hall-meeting/.

[4] See, e.g., Selma Algar, "DOE wants to move Carranza town hall from Chinatown to Chelsea," New York Post, Feb. 13, 2020, at https://nypost.com/2020/02/13/doe-wants-to-move-carranza-town-hall-meeting-from-chinatown-to-chelsea/.

ostensibly to increase minority enrollment, protests erupted within the Asian community accusing the Chancellor and Mayor of pitting one minority group against another.[5]

9.     In December 2018, CACAGNY along with others in the Asian community sued the Chancellor and Mayor alleging that their education policies concerning Specialized High School admissions were racially motivated and designed to achieve an unconstitutional racial balance at these schools.[6]

10.     From June 2019 through and including March 2020, members of CACAGNY, including certain Plaintiffs, along with other Asian-Americans, have engaged in active protests and picketing against Defendants DOE, City, Chancellor, and/or Mayor, before, during, and after education-related public meetings, including in 2019—on June 18 and 26, July 18 and 31, August 6, September 4, and in 2020—on January 7 and 16, February 4, 19, and 26, and March 2, frequently displaying signs or posters containing political speech as described herein.[7]

11.     For example, at or around School buildings, Town Halls, and/or City education-related meetings, Plaintiffs, along with other Asian-Americans, possessed politically expressive material, including signs, flyers, or posters. The content of the material include: "Fire Carranza for breeding racism, corruption and cronyism;" "No Trickle Down School Racism;" "Carranza Spreads Anti-Semitic and Anti-Asian Rhetoric;" "Carranza is Silencing Parents;" "Indict Carranza for Grade Fraud A RICO Probe;" "Stop Spreading Hate;" "Stop Spreading Hate in the

---

[5] See, e.g., Alex Zimmerman and Monica Desare, "De Blasio's specialized school proposal spurs outrage in Asian communities," Chalkbeat, June 5, 2018, at https://ny.chalkbeat.org/2018/6/5/21105142/de-blasio-s-specialized-school-proposal-spurs-outrage-in-asian-communities.

[6] See Christa McCauliffe Intermediate School PTO, Inc. v. Bill de Blasio, 18-CV-11657 (ER)(OTW) at https://pacificlegal.org/wp-content/uploads/2018/12/Complaint-filed-3-1552-1-1.pdf.

[7] See, e.g., CACAGNY's website at http://www.cacagny.org/ for information concerning certain protest activities.

name of Diversity;" "Carranza is a racist! Needs to be fired!"; "Asians Aren't Yellow;" and "Stop All Bullying and Sexual Assault."

12.     Upon information and belief, because of their public and vocal protests, the Asian-American community, which includes Plaintiffs, have been and are being targeted by Defendants DOE, City, Chancellor, and/or Mayor, including their employees and agents, for the purposes of discouraging and abridging their political speech by the manner and means described herein.

**February 4, 2020 Incident**

13.     On February 4, 2020, a Town Hall meeting was scheduled in conjunction with a CEC District 22 meeting at the James Madison High School located at 3787 Bedford Avenue (hereafter "School building"), in the Sheepshead Bay neighborhood of Brooklyn, New York.

14.     Thereat, DOE and City Defendants, including the individuals named and described herein, each of whom are employees and agents of the DOE, City, Chancellor, and/or Mayor, along with members of the NYPD and/or NYPD School Safety Division, did intentionally, purposefully, unlawfully, and unconstitutionally:

a.  selectively refuse Asian-Americans access to School buildings and Town Hall meetings, while allowing non-Asians access to School buildings and public Town Hall meetings;

b.  selectively search Asian-Americans for signs or posters for the purposes of precluding Asian-Americans from entering School buildings or Town Hall meetings and from bringing protest signs or posters into Town Hall meetings, while not searching non-Asians and thereby allowing non-Asians to enter

School buildings and Town Hall meetings, and bring protest signs or posters into Town Hall meetings;

    c.    selectively physically confront, accost, or manhandle Asian-Americans to intimidate or dissuade them from entering, and otherwise sought to prevent their gaining access to School buildings and attending Town Hall meetings; and

    d.    selectively and successfully dissuade Asian-Americans from entering School buildings and attending Town Hall meetings.

15.    Upon information and belief, these unconstitutional and unlawful actions constitute the policies and practices of Defendants DOE, City, Chancellor, and/or Mayor, as well as the NYPD and the NYPD School Safety Division, and were taken upon the instructions of Defendants' employees and agents and at the behest of the DOE and/or City, including the Chancellor and/or Mayor, and/or members of the Chancellor or Mayor's offices, with the knowing cooperation and assistance of the City's NYPD and/or NYPD School Safety Division.

16.    Further, by their actions as described herein, including by stopping, confronting, seizing, searching, physically touching, pushing, intimidating, coercing, and/or manhandling Plaintiffs, each of whom is Asian-American, Defendants, individually and jointly, purposefully and intentionally, violated Plaintiffs' United States and New York State constitutional rights by unconstitutionally and unlawfully:

    a.    suppressing and/or prohibiting Plaintiffs from expressing their political views;

    b.    suppressing and/or negating Plaintiffs' free speech rights;

    c.    suppressing and/or restricting Plaintiffs' freedom of association;

    d.   selectively stopping, seizing, searching, and/or otherwise manhandling Plaintiffs;

    e.   selectively harassing, intimidating, and/or coercing Plaintiffs to dissuade them from engaging in free speech or free association rights; and/or

    f.   selectively treating Plaintiffs differently from non-Asians

in that Defendants prohibited, restricted, and/or limited Plaintiffs' access to School buildings and participation at the Town Hall meetings at which Chancellor Carranza or Mayor de Blasio, or their respective employees or agents, were scheduled to address the public.

17.    Defendants, individually and jointly, purposefully and intentionally, treated Asian-Americans differently from non-Asians by prohibiting, restricting, and/or limiting Asian-Americans' access to School buildings and attendance at Town Hall meetings, while freely and without restriction allowing multiple non-Asians access to, and attendance at, School buildings and/or Town Hall meetings, including providing non-Asians access to School buildings and/or Town Hall meetings without being stopped, confronted, searched, or manhandled, and without prohibiting non-Asians from carrying signs or posters into School buildings and/or Town Hall meetings.

18.    Upon information and belief, because Defendants, individually and jointly, purposefully and intentionally, engaged in selective actions against Asian-Americans only, Defendants discriminated against Plaintiffs because of their race, color, ethnicity, and/or national origin as Asian-Americans in violation of the Equal Protection Clause of the Fourteenth Amendment and a similar provision in the New York State Constitution.

19.    The policies and practices challenged here constitute the official municipal policy of Defendants DOE, City, Chancellor Carranza, and/or Mayor, as well as the NYPD and the

NYPD School Safety Division, and are utilized by the DOE and City, and their respective employees and agents, to effectively preclude, impede, and/or silence lawful and peaceful political free speech and protest activities by Asian-Americans at DOE and/or City scheduled public events, including meetings to be attended by the Chancellor and/or Mayor, and/or other DOE or City officials. Defendants also include Assistant School Principal Jason Marino, Assistant School Principal John Doe No. 2, School Safety Officer John Doe No. 3, Police Officer John Doe No. 4, Police Officer John Doe No. 5, School Safety Officer John Doe No. 6, School Safety Officer John Doe No. 7, and School Safety Officer John Doe No. 8, among others also unidentified.

20.     At and/or outside public School buildings, Defendants engaged in stopping Asian-Americans, subjecting them to searches, and/or physically impeding their access to School buildings and/or Town Hall meetings, which are all actions that constitute the official policy of Defendants DOE, City, Chancellor Carranza, and/or Mayor Bill DeBlasio, as well as the NYPD and NYPD School Safety Division. The stopping, searching, and/or impeding free speech, free association, protest activities by Defendants of only Asian-Americans, including unlawfully impeding access to public facilities and meetings at which the Chancellor and/or Mayor appears, constitute a municipal policy because these activities occurred prior to, at, and/or during DOE and/or City events, including Town Hall meetings, and amount to an orchestrated and deliberate custom and usage of the DOE and/or City Defendants.

21.     The DOE and City Defendants' respective failures to appropriately train and supervise the members of the NYPD and the NYPD School Safety Division, along with employees or agents of the DOE and/or City in order to address a known pattern of unconstitutional stopping, seizing, searching, and/or physically impeding access of Asian-

Americans only to public meetings, through the use of unconstitutional touching, shoving, pushing, intimidation, harassment, or other unnecessary and abusive exercises of coercion and/or physical force, amount to deliberate indifference of Asian-Americans' constitutional rights, thus constituting an official municipal policy.

22.     Accordingly, Plaintiffs seek class-wide declaratory and injunctive relief to prevent such abuses by the DOE, City, Chancellor, Mayor, NYPD, and/or NYPD School Safety Division, including their respective employees and/or agents.

23.     In addition, an individually named Plaintiff, who experienced a physical assault, by employees and/or agents of the DOE, City, NYPD, and NYPD School Safety Division — Siu-Lin Linda Lam — seeks money damages on behalf of herself only.

## JURISDICTION AND VENUE

24.     Plaintiffs bring this action pursuant to 42 U.S.C. §1981 and 42 U.S.C. §1983 for violations of their civil rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under the Constitution and laws of the State of New York.

25.     The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331, 1343(a)(4). This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

26.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.5. This Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper. Rule 65 of the Federal Rules of Civil Procedure authorizes injunctive relief. The Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

27.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because several Plaintiffs reside in this District, and Defendants DOE, City, Chancellor Carranza, and/or Mayor Bill DeBlasio have their respective headquarters in this District.

28.     Required Plaintiffs filed a timely written Notice of Claim in accordance with N.Y. GEN. MUN. LAW § 50-e(1)(a). Over thirty days will have elapsed since the filing of that notice and this matter is not settled or otherwise disposed of.[8]

## PARTIES

Plaintiff Class Representatives

29.     Plaintiff Chinese American Citizens Alliance Greater New York (CACAGNY) is a member organization that represents thousands of Asian-Americans within the City of New York.

30.      CACAGNY is a Section 501(c)(8) fraternal organization, is incorporated in Delaware, and has its principal place of business within the County, City, and State of New York.

31.     CACAGNY's mission is to empower Chinese-Americans by advocacy for Chinese-American interests based on principles of fairness and equal opportunity, and guided by the ideals of patriotism, civility, dedication to family and culture, and the highest ethical and moral standards.

32.     Since its re-chartering in 2016, education has been a key focus of CACAGNY's advocacy on behalf of Chinese-American rights and an important issue for Asian-Americans generally. Education is also an area in which Asians face great discrimination. In New York

---

[8] Governor Andrew Cuomo has signed various Executive Orders, which have tolled, inter alia, the statutory time period to file a Notice of Claim, from March 20, 2020 through November 3, 2020.

City, for example, many Asian-Americans are recent immigrants; for Plaintiffs, as well as other Asian-Americans, public education is integral to their realizing the American dream on behalf of themselves and their children.

33.     The activities documented in CACAGNY's website demonstrate CACAGNY's deep and lasting commitment to fight for Chinese-American rights in public education.[9]

34.     Plaintiff Phillip **Yan Hing Wong** is President of CACAGNY, an Asian-American, and resides in the County of Queens, City and State of New York. Plaintiff Wong brings this action in his official and representative capacities as President of CACAGNY. Plaintiff Wong has three daughters, each of whom attended or are currently attending DOE public schools.

35.     Plaintiff Siu-Lin Linda Lam is Asian-American and resides in the County of Queens, City and State of New York. Plaintiff Lam's daughter attended Stuyvesant High School, one of the City's elite specialized high schools.

36.     Plaintiff Lucas Liu is Asian-American and resides in the County, City, and State of New York. Plaintiff Liu has two children, both of whom currently attend DOE public schools.

37.     Plaintiff George Lee is Asian-American and resides in the County, City, and State of New York. Plaintiff Lee has four children, all of whom attended DOE public schools.

38.     Plaintiff Xuhui Ni is Asian-American and resides in the County of Kings, City and State of New York. Plaintiff Ni has two children, both of whom currently attend DOE public schools.

---

[9] See generally, CACAGNY's website at http://www.cacagny.org/home.html, and see, e.g., http://www.cacagny.org/20190626_firecarranza.html regarding CACAGNY's issues and concerns over public education in New York City.

Defendants

39.     Defendant New York City Department of Education is organized pursuant to Article 52-A of the New York Education Law, which delineates the powers and duties of the city school district of the City of New York, and which is referred to and known as the DOE.

40.     At all times relevant, Defendant DOE, acting through its employees and agents, was responsible for the policy, practice, supervision, implementation, and conduct of all its employees and agents and their respective meetings, and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all DOE personnel. In addition, at all times relevant, Defendant DOE was and is responsible for enforcing the rules of the DOE, and for ensuring that DOE personnel obey the laws of the United States, State of New York, and City of New York.

41.     Defendant City of New York is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. Defendant City has established and maintains the NYPD and the DOE as constituent departments or agencies of the City.

42.     At all times relevant, Defendant City, acting through the NYPD and the NYPD School Safety Division, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD and NYPD School Safety Division matters and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD and NYPD School Safety personnel. In addition, at all times relevant, Defendant City was and is responsible for enforcing the rules of the NYPD and NYPD School Safety Division, and for ensuring that the NYPD and NYPD School Safety Division personnel obey the laws of the United States, State of New York, and City of New York.

43.     Defendant Richard A. Carranza is the current Chancellor of the DOE, its chief executive officer of the city school district, and has his primary headquarters located in the County, City, and State of New York.

44.     Defendant Bill De Blasio is the Mayor and chief executive of the City of New York, and has his primary headquarters located in the County, City, and State of New York.

45.     Defendant Jason Marino is an employee of the DOE and works at the James Madison High School in Brooklyn, New York as an Assistant Principal.[10] He is sued here in both his individual and official capacities.

46.     Defendant John Doe No. 2 is an employee of the DOE and, upon information and belief, at all relevant times, works at the James Madison High School in Brooklyn, New York. He is sued here in both his individual and official capacities.

47.     Defendant NYPD School Safety Officer John Doe No. 3, upon information and belief, at all relevant times, is an employee of the City's NYPD School Safety Division. He is sued here in both his individual and official capacities.

48.     Defendant NYPD Police Officer John Doe No. 4, upon information and belief, at all relevant times, is an employee of the City's NYPD. He is sued here in both his individual and official capacities.

49.     Defendant NYPD Police Officer John Doe No. 5, upon information and belief, at all relevant times, is an employee of the City's NYPD. He is sued here in both his individual and official capacities.

---

[10] Prior to being identified by Plaintiffs, Defendant Marino was referred to as John Doe No. 1.

50.     Defendant NYPD School Safety Officer John Doe No. 6, upon information and belief, at all relevant times, is an employee of the City's NYPD School Safety Division. He is sued here in both his individual and official capacities.

51.     Defendant NYPD School Safety Officer John Doe No. 7, upon information and belief, at all relevant times, is an employee of the City's NYPD School Safety Division. He is sued here in both his individual and official capacities.

52.     Defendant NYPD School Safety Officer John Doe No. 8, upon information and belief, at all relevant times, is an employee of the City's NYPD School Safety Division. He is sued here in his individual and official capacities.

## CLASS ACTION ALLEGATIONS

53.     Pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(2), Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals. Plaintiffs request the Court to certify Asians, as a class, including parents who will have, have, or had children enrolled in DOE public schools, along with other community members and education stakeholders, and who: (a) have been, are being, or could be subjected to an unlawful stop, seizure, or search, or who are at risk of being subjected to an unlawful stop, seizure, or search, outside or inside DOE public schools while exercising their political free speech or free association rights because of the policies and practices of Defendants DOE, City of New York, Chancellor Carranza, and/or Mayor de Blasio, as well as the NYPD and the NYPD School Safety Division, or (b) have been, are being, or could be subjected to being physically or effectively prevented, impeded, or discouraged from protesting outside or inside DOE public schools, activities vital to the exercise their political free speech or free association rights, including protesting and/or carrying or displaying political signs or posters inside or outside

public schools, supporting or opposing rules, regulations, policies, or practices of Defendants

DOE, City, Chancellor Carranza, and/or Mayor Bill De Blasio, because of the policies and

practices of Defendants DOE, City, Chancellor Carranza, and/or Mayor Bill De Blasio, as well

as the NYPD and the NYPD School Safety Division.

54.     This action satisfies all four requirements of Rule 23(a):

a.   *Numerosity*: Joinder of all class members is impracticable because of the size

of the class and the fact that the class includes some members who cannot be

identified with any degree of specificity. According to the enrollment figures

for the 2019-2020 academic year, for example, there are approximately 1.126

million students enrolled in the City's public schools and approximately 16.2

% are identified as Asian. Moreover, the identity of Asian-American parents

with children who attend DOE public schools is not readily or easily

determined. The identity of those Asians whose children will attend DOE

public schools and would potentially be subjected to the challenged policies

and practices in the future cannot readily or easily be determined. The identity

of Asian education stakeholders, which include members of the Asian

community, who may not have children in the public school system but

nonetheless are affected by the DOE, City, Chancellor and/or Mayor's actions

or inactions, as well as those of the NYPD and the NYPD School Safety

Division, as they relate to NYC public schools.

b.   *Commonality*: There are questions of law and fact common to all members of

the class, including but not limited to, whether Defendants DOE, City,

Chancellor Carranza, and/or Mayor Bill De Blasio, as well as the NYPD and

the NYPD School Safety Division, maintain a policy and practice of unlawfully stopping, seizing, and/or searching Asian-Americans because of their race, color, ethnicity, and/or national origin outside or upon entry to public school buildings. There are also questions of law and fact common to all members of the class, including but not limited to, whether Defendants DOE, City, Chancellor Carranza, and/or Mayor Bill De Blasio, as well as the NYPD and the NYPD School Safety Division, maintain a policy and practice of unlawfully interfering with Asian-Americans rights to engage in political freedom of speech and/or freedom of association as it relates to public education in New York City.

c. *Typicality*: The claims of the representative Plaintiffs are typical of those of the class. Each named Plaintiff has been subjected to the challenged policies and practices and, by virtue of his or her status as an Asian-American and by exercising his or her political free speech or free association rights, outside or inside a DOE public school, remains at risk of being subjected to these policies and practices again in the future.

d. *Adequacy of Representation*: The class representatives and class counsel will fairly and adequately represent the interests of the class. The class representatives have no interests in this matter that are antagonistic to other class members. Class counsel has many years of experience in civil rights and class action litigation.

55.     Class-wide declaratory and injunctive relief is appropriate under Rule 23(b)(2) because Defendants, individually and jointly, have acted or refused to act on grounds generally applicable to the class as a whole.

## NYPD AND NYPD SCHOOL SAFETY DIVISION

56.     Since 1998, the NYPD School Safety Division has authority to patrol the buildings and grounds of public schools operated by the DOE and to engage in policing activities with respect to those schools. Today, the NYPD School Safety Division, a branch of NYPD, includes over 5,000 School Safety Officers assigned to patrol specific school sites.

57.     Upon information and belief, the NYPD School Safety Division assigns between three and eight School Safety Officers to each New York City public middle school and high school. In addition, the NYPD School Safety Division includes at least 191 NYPD precinct-based police officers assigned to patrol public schools generally.

58.     NYPD School Safety Officers wear NYPD-issued uniforms and, as peace officers, maintain full authority to stop, frisk, detain, question, search, and arrest individuals both on and off school grounds. School Safety Officers do not carry firearms, but they do carry handcuffs. The NYPD School Safety Division's precinct-based police officers are armed and are indistinguishable from the NYPD police officers who patrol New York City streets, except that these officers are assigned to patrol New York City public schools.

59.     Upon information and belief, unlike other NYPD police officers who ordinarily receive six months of training prior to being deployed to city streets, NYPD School Safety Officers receive only fourteen weeks of training prior to being deployed to New York City public schools.

60.     Job qualifications for NYPD School Safety Officers differ from those for other NYPD police officers as well. Unlike other NYPD police officers, NYPD School Safety Officers are not required to have at least sixty hours of college credit or at least two years of military service to qualify. On information and belief, NYPD School Safety Officers are also subjected to less rigorous medical, psychological, and character screenings than other NYPD police officers.

61.     Notwithstanding these differences, all members of the NYPD School Safety Division, including School Safety Officers, are law enforcement officers. It is not uncommon for NYPD School Safety Division Officers and NYPD police officers to act cooperatively with each other as they relate to NYC public schools.

62.     Neither NYPD Police Officers nor NYPD School Safety Officers are employees of the DOE or are educators. However, and though DOE principals and school administrators have no ultimate authority over NYPD Police Officers and NYPD School Safety Officers, DOE employees and agents often cooperate with NYPD police officers and NYPD school safety officers in enforcing municipal (DOE and City) policies and practices.

63.     The NYPD School Safety Division constitutes the fifth largest police force in the country. There are over 5,000 NYPD School Safety Division police personnel in public schools.

64.     Here, and for example, on February 4, 2020, Defendants, including School Safety Officer John Doe No. 3, Police Officer John Doe No. 4, Police Officer John Doe No. 5, School Safety Officer John Doe No. 6, School Safety Officer John Doe No. 7, and School Safety Officer John Doe No. 8 were acting in cooperation with DOE employees Defendants Jason Marino and John Doe No. 2, both of whom are believed to be DOE Assistant Principals, in carrying out the unlawful policies and practices of Defendants DOE, City, Chancellor Carranza, and/or Mayor Bill De Blasio, as well as the NYPD and the NYPD School Safety Division.

65.     Such joint DOE and City law enforcement actions make it impossible for Asian-Americans to be treated fairly and consistently with respect to their constitutional political free speech and free association rights when they engage in political speech outside or inside DOE public school buildings.

## FACTS RELATING TO CLASS REPRESENTATIVES

66.     On February 4, 2020, at approximately 6:30 pm, the Chancellor was due to arrive and convene a Town Hall meeting at the James Madison High School building. The meeting was to be held in the School's auditorium. The public had been previously notified of the meeting and invited to attend.

67.     As was customary for most public meetings organized by the DOE and/or City, individuals who desired to speak at a Town Hall meeting were required to sign up on a list designated for that purpose, which was located inside the building and outside the auditorium.

68.     On February 4, 2020, persons desiring to speak at the Town Hall were only able to sign up starting at 6:00 pm and ending at 6:30 pm.

69.     At approximately 6:00 pm some of the Plaintiffs, along with other Asian-Americans and non-Asians, gathered for a rally outside the School building. Soon approximately 20 people were actively picketing near the entrance of the School building.

70.     The picketing group was advised by certain Defendants, including members of NYPD and NYPD School Safety, that they could not use a public address system and could not block the sidewalk. Plaintiffs along with the other members of the picketing group complied with the directions issued.

Plaintiff Siu-Liu Linda Lam

71.     Prior to the commencement of the Town Hall meeting at the School building,

Plaintiff Siu-Lin Linda Lam entered the School building and then the school auditorium, where

the Town Hall meeting was to occur, to save herself a seat. After putting her belongings down on

a seat, she spoke with DOE Superintendent Julianna Bove and Acting Deputy Chancellor

Adrienne Austin ("ADC Austin") before she returned outside to join the planned protest rally

against the DOE and Chancellor Carranza.

72.     Shortly before the scheduled 6:30 pm Town Hall meeting start time, Plaintiff Lam

attempted to enter the School building. Two defendants—Jason Marino and John Doe No. 2—

blocked her as she attempted to enter the School building. When Plaintiff Lam attempted to

avoid them, Defendants Jason Marino and John Doe No. 2 again blocked Plaintiff Lam from

proceeding.

73.     During the time Plaintiff Lam was stopped, blocked, and prohibited from entering

the School building, Defendants Jason Marino and John Doe No. 2 were allowing non-Asian

individuals to walk by Plaintiff Lam and to enter the School building.

74.     During this time, Plaintiff Lam observed another Asian American woman, who

was carrying a sign, being told by John Doe No. 2 to stop, and she was denied entrance to the

School building. Plaintiff Lam, who was not holding any signs, again approached the School

building door and was stopped again by Defendant Marino, who grabbed Plaintiff Lam's arm

and pushed her away from the door. Uniformed Defendant NYPD Police Officer John Doe No.

5, Defendant NYPD School Safety Officer John Doe No. 3, Defendant NYPD School Safety

Officer John Doe No. 6, and Defendant NYPD School Safety Officer John Doe No. 7 joined

Defendant Marino and John Doe No. 2 and surrounded Plaintiff Lam. She was told to leave.

75. Defendant NYPD School Safety Officer John Doe No. 6 confronted Plaintiff Lam and told her to follow him to leave; when she did not move, he went behind her and pushed her from the back. He continued to apply more pressure to Plaintiff Lam's back, causing her to experience physical pain. Plaintiff Lam had no choice but to step back out of the School building door, where she had been standing, and through which she was attempting to enter.

76. Defendant DOE employee John Doe No. 2 told Plaintiff Lam, other Plaintiffs, and other members of the picketing group, "No signs."

77. A short time later, Plaintiff Lam again tried to enter the School building. Plaintiff Lam told Defendant DOE employee John Doe No. 2 that she had no sign; when he said nothing, Plaintiff Lam felt compelled to open her coat to show him that she was not hiding a sign. At that point, she was finally let into the School building and to the Town Hall meeting.

78. Once Plaintiff Lam gained access to the auditorium, she spoke with CEC 22 Superintendent Bove and told her that Asians were not being allowed into the meeting. Superintendent Bove did nothing except tell Plaintiff Lam to talk to ADC Austin.

79. Plaintiff Lam was told by ADC Austin that as long as the signs had no sticks, signs were allowed into the Town Hall meeting.

80. As a result of the physical confrontation with Defendants, Plaintiff Lam suffered physical injury, and suffered and still suffers mental anguish and emotional distress.

81. Plaintiff Lam fears taking part in protests or rallies at, outside, or inside DOE public schools or attending other City education-related functions because she is Asian-American and therefore might encounter DOE personnel, or NYPD Officers, or NYPD School Safety Officers who may subject her to the same or similar unlawful treatment, including

stopping her, searching her, subjecting her to harassment and intimidation, and using coercion and physical force against her in the future.

Plaintiff George Lee

82.     On February 4, 2020, when Plaintiff George Lee attempted to enter the School building, he was physically impeded by Defendants DOE employee John Doe No. 2 and NYPD School Safety Officer John Doe No. 7. Defendant John Doe No. 2 told him, "No signs."

83.     Plaintiff Lee advised Defendants DOE employee John Doe No. 2 and NYPD School Safety Officer John Doe No. 7 that he had no signs, but both Defendants still physically impeded Plaintiff Lee from entering the School building.

84.     Plaintiff Lee, to get inside the School building and attend the Town Hall meeting, felt compelled to open his coat and demonstrate to both Defendants that he was not hiding any signs. Still, those Defendants denied Plaintiff entry by physically blocking him from entering the School building even though he did not have any signs with him.

85.     Sometime later, for unknown reasons, Plaintiff Lee was allowed to enter the School building and the Town Hall meeting.

86.     Plaintiff Lee, however, still fears that because he is Asian-American, DOE personnel, NYPD police officers, and/or NYPD School Safety officers will accost him, harass him, intimidate him, or coerce him should he engage in political speech outside or inside public school buildings in conjunction with DOE Town Hall meetings or other City education functions.

Plaintiff Lucas Liu

87.     On February 4, 2020, Plaintiff Lucas Liu arrived at the protest rally outside the School building a short time after 6:00 pm. He carried a handful of flyers containing political speech material he intended to hand out at the Town Hall meeting.

88.     After being informed by a protester that Asians were not being allowed entry because they were holding signs, Plaintiff Liu approached Defendants NYPD School Safety Officers John Doe Nos. 6, 7, and 8, who were standing at the door to the School building, and asked them if they were denying entry to attendees because they were holding signs. These Defendants refused to answer Plaintiff Liu. Defendant NYPD School Safety Officer John Doe No. 8 told Plaintiff Liu that he [Liu] could speak with DOE staff because that is who the NYPD School Safety Officers "were supporting."

89.     Upon Plaintiff Liu's attempt to enter the School building, Defendant NYPD School Safety Officer John Doe No. 6 refused him entry because Plaintiff Liu was Asian and was carrying flyers. Defendant NYPD School Safety Officer John Doe No. 8 then asked an unidentified person where "Mr. Edwards" was. Plaintiff Liu assumed that "Mr. Edwards" was the DOE staff member whom Plaintiff Liu should talk to.

90.     After handing the flyers to another protester, Plaintiff Liu again attempted to enter the School building but was physically blocked from doing so by Defendant NYPD School Safety Officer John Doe No. 6. Plaintiff Liu held up his hands to show Defendants NYPD School Safety Officers John Doe Nos. 6 and 8 that he had no signs or flyers.

91.     Defendant NYPD School Safety Officer John Doe No. 8 then told Defendant NYPD School Safety Officer John Doe No. 6 to allow Plaintiff Liu into the School building because he was not carrying any political-speech material.

92.     When Plaintiff Liu entered the School building, and as he was searching for ADC Austin, he was informed about the actions of both Defendants Marino and DOE employee John Doe No. 2 in impeding Asian-Americans' access to the School building.

93.     Plaintiff Liu approached and asked both Defendants Marino and DOE employee John Doe No. 2 to identify themselves. Both refused to do so.

94.     Plaintiff Liu continued to search for ADC Austin. When he found her, Plaintiff Liu complained that Asians were being prevented from entering the School building and the Town Hall meeting.

95.     Plaintiff Liu feels and continues to feel heightened concern and distress that if he attends public school functions, he will be harassed, intimidated, accosted, or subjected to search by DOE employees, NYPD Police Officers, or NYPD School Safety Officers, particularly if he is engaged in political free speech.

Plaintiff Xuhui Ni

96.     On February 4, 2020, Plaintiff Ni attempted to enter the School building with a sign curled up in his hand. Plaintiff Ni was stopped in the vestibule and told that he could not bring a sign into the auditorium and to leave the School building.

97.     Plaintiff Ni went outside the School building and put the sign in his coat. He then attempted to enter the School building but was physically pulled from the line to enter the building by Defendant NYPD School Safety Officer John Doe No. 6 for carrying a sign. Plaintiff Ni then placed his sign on the ground and again attempted to enter the School building. Defendant NYPD School Safety Officer John Doe No. 6 reiterated to Plaintiff Ni that he could not come in. Other Asian-Americans who did not have signs were also not being allowed access to the School building.

98.     After he was denied entry, Plaintiff Ni asked Defendants DOE employee John Does No. 2 and NYPD School Safety Officers John Doe Nos. 6 and 8 why he was not allowed in. Defendant NYPD School Safety Officer John Doe No. 8 told Plaintiff Li that the sign was "a problem." Plaintiff Ni then tried to enter the School building again and was told by Defendant NYPD School Safety Officer John Doe No. 6, "Don't make trouble."

99.     Plaintiff Ni was directed to "open his jacket." After Plaintiff Ni complied, and demonstrated he was not hiding a sign, he was then allowed to enter the School building and attend the Town Hall meeting.

Asian-American Male

100.    An Asian-American male also tried to enter the School building to attend the public Town Hall meeting, but he was prevented from doing so by Defendants Jason Marino and DOE employee John Doe No. 2. When he tried to get in, he was told by DOE employee John Doe No. 2, "You cannot bring in a sign." However, the man was not carrying a sign.

101.    Further, the Asian-American male pointed out to Defendants, including Defendants Marino and DOE employee John Doe No. 2, that Defendant City and DOE employees and agents were allowing non-Asian individuals into the School building and the Town Hall meeting ahead of and instead of him and other Asian-Americans, who were being excluded.

102.    Minutes later, the same Asian-American male again tried to enter the School building through another door and was pushed out of the door by Defendant NYPD Police Officer John Doe No. 4. He then attempted to enter through another door, but Defendant NYPD School Safety Officer John Doe No. 6 pushed him away.

103.    Dissuaded from entering the School building and attending the Town Hall meeting, the Asian-American male eventually left the area; he did not attend the Town Hall meeting.

Additional Facts Relevant to All Plaintiffs

104.    Upon information and belief, and as observed by Plaintiffs, it appeared from the events that transpired that at least Defendants Marino and DOE employee John Doe No. 2 were "in charge" and were giving directions to NYPD uniformed Police Officers and NYPD School Safety Officers in the area.

105.    Upon information and belief, Defendants Marino and DOE employee John Doe No. 2, along with other City and DOE employees, were told by their supervisors or by someone "in authority" to prevent Asian-American protestors with and without signs or posters or other political-speech material from entering the School building and gaining access to the Town Hall meeting.

106.    Defendants targeted and blocked Asians-Americans from entering the School building, regardless of whether they had signs, posters, or other political-speech materials.

107.    Non-Asians were not denied entrance into the School building.

108.    Non-Asians were not denied access to the Town Hall meeting.

109.    Non-Asians were not searched outside or upon entering the School building.

110.    Non-Asians were not denied the right to bring signs, posters, or other political-speech material into the School building and the Town Hall meeting.

111.    Only Asian-Americans, because of their race, color, ethnicity, and/or national origin, were selectively denied entrance into the School building and the Town Hall meeting.

112.     Only Asian-American, including Plaintiffs and other Asian-Americans, were selectively denied entry entrance into the School building and the Town Hall meeting because they were or were believed to be carrying signs, posters, or other political speech materials.

113.     Only Asians-Americans, because of their race, color, ethnicity, and/or national origin, were selectively searched upon their respective attempts to enter the School building and the Town Hall meeting.

114.     Only Asians-Americans, because of their race, color, ethnicity, and/or national origin, were selectively denied the right to bring signs, posters, or other political-speech material into the School building and the Town Hall meeting.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
### 42  U.S.C. § 1983

115.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

116.     In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states through the Fourteenth Amendment.

117.     Defendants the City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, along with the NYPD and/or the NYPD School Safety Division, are liable pursuant to 42 U.S.C. § 1983 for maintaining a policy, practice, and custom of unreasonably restricting, impeding, and preventing Asian-Americans from exercising their political free speech rights in violation of the First and Fourteenth Amendments to the United States Constitution.

118.     Plaintiffs' politically motivated protest rallies against the City, DOE, Mayor, and/or Chancellor Carranza that occur outside and inside School buildings and/or at Town Hall

meetings are speech and expressive activity related to matters of public concern. Such political speech is therefore protected by the First and Fourteenth Amendments of the United States Constitution.

119.    Each individual Plaintiff's participation at protest rallies, together with other members of the Asian-American community, some of whom are members of CACAGNY, is protected association under the First and Fourteenth Amendments of the United States Constitution.

120.    **Discrimination Based on Political Beliefs and Associations:** Defendants violated the First and Fourteenth Amendments of the United States Constitution by barring and preventing Asian-Americans from entering School buildings and Town Hall meetings because they were engaging in a protest rally outside School buildings and at Town Hall meetings against Defendants City, DOE, Mayor, and Chancellor Carranza based on their protected political beliefs and associations.

121.    **Restriction on Political Expression:** Because of their unlawful actions, Defendants violated the First and Fourteenth Amendments of the United States Constitution because they unduly restricted Asian-Americans' ability to engage in core political expression and expressive activity, including participation in political rallies and protests.

122.    **Content and Viewpoint Discrimination:** Defendants violated the First and Fourteenth Amendments of the United States Constitution because they discriminated against protected expression based on the expression's content and viewpoint in that Plaintiffs were taking part in a protest rally at the School building and before the Town Hall meeting, and were holding or carrying signs critical to the City, DOE, Mayor, and/or Chancellor Carranza. Because of the content and viewpoints expressed by Plaintiffs, Defendants abused their authority and

acted to prevent Plaintiffs from entering School buildings and Town Hall meetings with signs, posters, and other political speech material expressing their views and opinions.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FOURTEENTH AMENDMENT
## EQUAL PROTECTION CLAUSE
### 42 U.S.C. § 1983

123.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

124.    Defendants violated the Equal Protection Clause of the Fourteenth Amendment because they abused their government authority and engaged in speaker-based discrimination against Asian-Americans based on their race, color, ethnicity, and/or national origin.

125.    Defendants selectively targeted Plaintiffs for unlawful, selective treatment on the bases of their race, color, ethnicity, and/or national origin, namely, because they are Asian-Americans.

126.    Defendants selectively targeted Plaintiffs for unlawful, selective treatment on the bases of their race, color, ethnicity, and/or national origin, namely, because they are Asian-Americans, and because they exercised fundamental First and Fourteenth Amendment rights.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK STATE CONSTITUTION
## EQUAL PROTECTION, NY CLS Const Art 1, § 11

127.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

128.    Defendants violated Article I § 11 of the New York State Constitution because they abused their government authority and engaged in speaker-based discrimination against Asian-Americans based on their race, color, ethnicity, and/or national origin.

129.     Defendants selectively targeted Plaintiffs for unlawful treatment on the bases of their race, color, ethnicity, and/or national origin, namely because they are Asian-Americans.

130.     Defendants selectively targeted Plaintiffs for unlawful treatment on the bases of their race, color, ethnicity, and/or national origin, namely, because they are Asian-Americans, and because they were engaging in political speech.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE NEW YORK STATE CONSTITUTION
## FREEDOM OF SPEECH, NY CLS Const Art 1, § 8

131.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

132.     Defendants violated Article I § 8 of the New York State Constitution because they barred and prevented Asian-Americans from entering School buildings and Town Halls because they were engaging in a protest rally outside School buildings and at Town Halls against Defendants City, DOE, Mayor, and/or Chancellor Carranza based on their protected political beliefs, political speech, and associations.

133.     Further, Defendants violated Article I § 8 of the New York State Constitution because they unduly restricted Asian-Americans' ability to engage in core political expression and expressive activity, including participation in political rallies and protests.

## FIFTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1981

134.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

135.     Defendants selectively targeted Plaintiffs for unlawful treatment because of their race, color, ethnicity, and/or national origin, namely, because they are Asian-Americans.

136.     Defendants selectively targeted Plaintiffs for unlawful treatment because of their race, color, ethnicity, and/or national origin, namely because they are Asian-American, and because they were engaging in political speech.

137.     Defendants intentionally deprived and intended to deprive Asian Americans of the same rights that are enjoyed by white citizens, and other non-Asian citizens, including to enter public buildings to attend public meetings, with and without political speech materials.

138.     As a result of Defendants' discriminatory conduct, Plaintiffs and other Asian-Americans have been denied their rights to enter public buildings and attend public meetings and engage in political speech.

139.     Defendants have acted with malice or reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to an award of punitive damages.

### SIXTH CAUSE OF ACTION
### MUNICIPAL LIABILITY
### 42  U.S.C. § 1983

140.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

141.     Defendants, jointly and severally, while acting under color of state law, engaged in activities and conduct that constituted a policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, as well as the NYPD and the NYPD School Safety Division, that violated the New York State and United States Constitutions.

142.     This policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, as well as the NYPD and the NYPD School Safety Division, included stopping, searching, harassing, intimidating, coercing, and/or

otherwise impeding Asian-Americans from engaging in political speech, including being prohibited from entering public buildings to attend public meetings, with and without political speech materials, which was evidenced by the actions and conduct of the individual Defendants as described herein.

143.    This policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, as well as the NYPD and the NYPD School Safety Division, also included inadequate training and supervision of their respective employees and agents, including but not limited to the individual Defendants.

144.    By failing to adequately train and supervise their respective employees and agents, including but not limited to the individual Defendants, NYPD, NYPD School Safety Division, and Defendants City, DOE, Mayor de Blasio, and/or Chancellor tacitly condoned, authorized, or otherwise agreed to the actions and conduct engaged in by the individual Defendants as described herein.

145.    The policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, as well as the NYPD and the NYPD School Safety Division, constituted deliberate indifference to the constitutional rights of Asian-Americans, including but not limited to the individually-named Plaintiffs.

146.    The policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, as well as the NYPD and the NYPD School Safety Division, was the direct and proximate cause of the constitutional violations suffered by Asian-Americans, including but not limited to the individually-named Plaintiffs.

147.    Defendants, individually and severally, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Asian-Americans, including but not limited to Plaintiffs.

148.    Defendants' actions and conduct described herein deprived Asian-Americans, including but not limited to Plaintiffs, of their constitutional rights, including being stopped, searched, harassed, intimidated, coerced, and/or otherwise impeded from engaging in political speech and freedom of association, including being prohibited from entering public buildings to attend public meetings, with and without political speech materials.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS**
**42 U.S.C. § 1983**

149.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

150.    Defendants City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza are liable pursuant to 42 U.S.C. § 1983 for maintaining a policy, practice, and custom of committing abuses against Asian-Americans that shock the conscience in violation of the Fourteenth Amendment to the United States Constitution.

151.    Defendants Jason Marino, DOE employee John Doe No. 2, NYPD School Safety Officers John Doe No. 3, 6, and 7, and NYPD Police Officer John Doe Nos. 5 are liable pursuant to 42 U.S.C. § 1983 for abuses against individually named Plaintiff Siu-Lin Linda Lam that shock the conscience in violation of the Fourteenth Amendment of the United States Constitution.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE FOURTH AMENDMENT
## <u>UNLAWFUL SEARCH AND SEIZURE</u>
### 42 U.S.C. § 1983

152.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

153.    Defendants are liable for the unreasonable searches and seizures of Asian-Americans, including Plaintiffs, in violation of the Fourth Amendment of the United States Constitution.

154.    Defendants Jason Marino, DOE employee John Doe No. 2, NYPD School Safety Officers John Doe Nos. 3, 6, and 7, and NYPD Police Officer John Doe No. 5 are liable for violating Plaintiff Siu-Lin Linda Lam's right under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures.

## NINTH CAUSE OF ACTION
## VIOLATION OF NEW YORK STATE CONSTITUTION
## <u>UNLAWFUL STOPS AND SEARCHES, NY CLS Const Art 1, § 12</u>

155.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

156.    Defendants are liable for the unreasonable stops and searches of Asian-Americans, including Plaintiffs, in violation of Article I § 12 of the New York State Constitution.

157.    Defendants Jason Marino, DOE employee John Doe No. 2, NYPD School Safety Officers John Doe Nos. 3, 6, and 7, and NYPD Police Officer John Doe No. 5 are liable pursuant to Article I § 12 of the New York State Constitution for the unreasonable stop and search of individually named Plaintiff Siu-Lin Linda Lam.

## TENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK STATE LAW
## <u>ASSAULT AND BATTERY</u>

158.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

159.    Defendants are liable for the assaults and batteries of Asian-Americans, including Plaintiffs, in violation of New York State law.

160.    Defendants Jason Marino, DOE employee John Doe No. 2, NYPD School Safety Officer John Doe Nos. 3, 6, and 7, and NYPD Police Officer John Doe No. 5 are liable for the assault and battery of individually named Plaintiff Siu-Lin Linda Lam in violation of New York State law.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF STATE LAW—*RESPONDEAT SUPERIOR* LIABILITY
## AGAINST DEFENDANTS CITY OF NEW YORK AND
## <u>NEW YORK CITY DEPARTMENT OF EDUCATION</u>

161.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

162.    Defendants City of New York and DOE are vicariously liable for the actions of their respective employees and agents who were on duty and acting within the scope of their respective employment when they engaged in the wrongful conduct described herein.

163.    As a result of the foregoing, Plaintiff Siu-Lin Linda Lam is entitled to compensatory damages in an amount to be determined by a jury, and is further entitled to punitive damages against the individual Defendants Jason Marino, DOE employee John Doe No. 2, NYPD School Safety Officers John Doe Nos. 3, 6, and 7, and NYPD Police Officer John Doe No. 5 in an amount to be determined by a jury, plus reasonable attorneys' fees, costs, expenses, and disbursements of this action.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF STATE LAW—
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

164.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

165.    Defendants Marino, John Doe No. 2, NYPD School Safety Officers John Doe Nos. 3, 6, and 7, and NYPD Police Officer John Doe No. 5 displayed outrageous conduct for the assault and battery of Plaintiff Lam and for surrounding her near the door to the School building in a concerted effort to intimidate and force her to leave the School building because she is Asian-American and because they believed she was engaging in expressive political activity.

166.    Defendants have either intentionally caused or recklessly disregarded the likelihood or probability that their actions would cause Plaintiff Lam to suffer severe emotional distress. Defendants' assault, battery, and/or intimidation of Plaintiff Lam seems as if it was done with the intention of causing her severe emotional distress, Defendants were at the very least reckless in their disregard of the probable harm their actions would cause Plaintiff Lam.

167.    Defendants' assault, battery, and/or intimidation of Plaintiff Lam is the cause of Plaintiff Lam's emotional distress.

168.    Plaintiff Lam has also suffered and continues to suffer severe emotional trauma as a result of fears of returning to protest rallies at, inside, or outside DOE public schools or attending other City education-related functions because she is Asian-American and because she was engaging in political speech therefore might encounter either NYPD Officers or NYPD School Safety Officers or DOE officials who may subject her to the same or similar unlawful treatment, including stopping her, subjecting her to harassment and intimidation, and/or using physical force against her in the future.

## THIRTEENTH CAUSE OF ACTION
## VIOLATION OF STATE LAW—
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

169.    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

170.    Defendants Marino, John Doe No. 2, NYPD School Safety Officers John Doe Nos. 3, 6, and 7, and NYPD Police Officer John Doe No. 5 NYPD displayed outrageous conduct for the assault and battery of Plaintiff Lam and for surrounding her near the door to the School building in a concerted effort to intimidate and force her to leave the School building because she is Asian-American and because they believed she was engaging in expressive political activity.

171.    Defendants' assault, battery, and/or intimidation of Plaintiff Lam is the cause of Plaintiff Lam's emotional distress.

172.    Plaintiff Lam has also suffered and continues to suffer severe emotional trauma as a result of the events described herein and fears returning to protest rallies at, inside, or outside DOE public schools or attending other City education-related functions or engaging in political speech at other education-related public meetings because she is Asian-American and therefore might encounter either NYPD Officers or NYPD School Safety Officers or DOE officials who may subject her to the same or similar unlawful treatment, including stopping her, subjecting her to harassment and/or intimidation, and using physical force against her in the future.

## JURY TRIAL DEMANDED

173.    Plaintiffs request a jury trial on all those claims permitting same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.      Assume jurisdiction over this matter;

B.      Certify this action as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(2);

C.      Declare that the policies and practices of the City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, along with the NYPD and the NYPD School Safety Division, to selectively stop, search, accost, harass, intimidate, coerce, and/or otherwise impede Asian-Americans absent probable cause of criminal activity violative of Plaintiffs' federal and state rights;

D.      Declare that Defendants individually and jointly violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights of the United States Constitution and the New York State Constitution;

E.      Declare that Defendants individually and jointly unlawfully discriminated against Plaintiffs as Asian-Americans because of their race, color, ethnicity, and/or national origin;

F.      Declare that Defendants individually and jointly treated Plaintiffs selectively because of their race, color, ethnicity, and/or national origin, namely Asian-American, and therefore violated the Equal Protection Clause of the Fourteenth Amendment, which precludes such actions;

G.      Declare that Defendants individually and jointly violated the Equal Protection Clause of the Fourteenth Amendment by unlawfully and without justification or cause stopping, searching, harassing, intimidating, coercing, and otherwise impeding Plaintiffs' entrance into public buildings and meetings because of Plaintiffs' race, color, ethnicity, and/or national origin;

H.      Declare that Defendants individually and jointly intentionally deprived Plaintiffs and other Asian Americans of the same rights that are enjoyed by white citizens and other non-Asians, including to enter public buildings and to attend public meetings, with and without political speech material, in violation of 42 U.S.C. § 1981;

I.        Declare that Defendants, individually and jointly, while acting under color of state law, engaged in activities and conduct that constituted a policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, Mayor Bill De Blasio, and/or Chancellor Carranza, along with the NYPD and NYPD School Safety Division, that violated the United States and the New York State Constitutions;

J.        Declare that Defendants, individually and jointly City, DOE, Mayor and/or Chancellor, Jason Marino, DOE employee John Doe No. 2, NYPD School Safety Officers John Doe Nos. 3, 6, and 7, and NYPD Police Officer John Doe No. 5, are liable for the assault and battery of Plaintiff Linda Lam in violation of New York State law;

K.        Preliminarily and permanently enjoin Defendants City, DOE, Mayor de Blasio, and/or Chancellor Carranza, including their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from any further violations of Plaintiffs' constitutional, statutory, and common law rights, including their selectively searching, prohibiting, accosting, harassing, intimidating, coercing, and/or impeding any other Asian-Americans at public rallies and during picketing, and from entering public buildings and public meetings, including Town Halls meetings, with or without signs, posters, and/or other material expressing political speech absent probable cause of criminal activity;

L.        Declare that Defendants City, DOE, Mayor de Blasio and/or Chancellor Carranza are vicariously liable for the actions of their employees and agents;

M.        Award Plaintiff Siu-Lin Linda Lam full and fair compensatory damages against Defendants City, DOE, Mayor de Blasio, and/or Chancellor Carranza for the unlawful actions of their employees and agents;

N.      Award Plaintiff Sui-Lin Linda Lam full and fair compensatory damages for

physical and emotional injuries against all Defendants for the injuries sustained by Plaintiff Siu-

Lin Linda Lam in an amount to be determined by a jury;

O.      Award punitive damages against the Defendants in an amount to be determined

by a jury;

P.      Award Plaintiffs their costs, expenses, disbursements, and reasonable attorneys'

fees in this action under 42 U.S.C. §1988; and

Q.      Grant any other and further relief as this Court may deem necessary, just, or proper.

Dated: New York, New York
      October 26, 2020

Respectfully submitted,

**ADVOCATES FOR JUSTICE**
*Attorneys for Plaintiffs*

                  /s/
Laura D. Barbieri
225 Broadway, Suite 1902
New York, New York 10007
Tel.:  (212) 285-1400, ext. 710
Fax:  (212) 285-1410
**Cell: (914) 819-3387 (preferred)**
lbarbieri@advocatesny.com