# EXHIBIT A

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

<table>
<tr><td>CHINESE AMERICAN CITIZENS ALLIANCE<br>GREATER NEW YORK, et al.<br><br>_____<br><i>Plaintiff(s)</i><br>v.<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION,<br>et al.<br>_____<br><i>Defendant(s)</i></td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Civil Action No.  20-cv-8964(LAK)</td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Yergey Dym
Police Officer
NYC Police Department
c/o Corporation Counsel of the City of New York
100 Church Street
New York, NY  10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Arthur Z. Schwartz
Advocates for Justice
225 Broadway, Suite 1902
New York, NY  10007

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   5/16/2024 _____          /s/ P. Canales _____
*Signature of Clerk or Deputy Clerk*

Civil Action No.  20-cv-8964(LAK)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

|  |  |  |
|---|---|---|
| CHINESE AMERICAN CITIZENS ALLIANCE GREATER NEW YORK, et al. | ) ) ) ) ) | |
| _Plaintiff(s)_ | ) | |
| v. | ) | Civil Action No.  20-cv-8964(LAK) |
| NEW YORK CITY DEPARTMENT OF EDUCATION, et al. | ) ) ) | |
| _Defendant(s)_ | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Yergey Dym
Police Officer
NYC Police Department
c/o Corporation Counsel of the City of New York
100 Church Street
New York, NY  10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Arthur Z. Schwartz
Advocates for Justice
225 Broadway, Suite 1902
New York, NY  10007

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____     _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  20-cv-8964(LAK)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                        *Server's signature*

                                                    _____
                                                        *Printed name and title*


                                                    _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

CHINESE AMERICAN CITIZENS ALLIANCE
GREATER NEW YORK, PHILLIP YAN HING WONG,
SIU-LIN LINDA LAM, LUCAS LIU, GEORGE LEE, and
XUHUI NI,

                                Plaintiffs,

             -against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
CITY OF NEW YORK; JASON MARINO, Asst. Principal,
individually; JOHN DOE NO. 1, individually; JOHN DOE
NO. 2 individually; YERGEY DYM, Police Officer,
individually; School Safety Officer JOHN DOE No. 3,
individually; and Police Officer JOHN DOE No. 4,
individually,

                                Defendants.

------------------------------------------------------------------------X

Case No. 20-cv-8964(LAK)

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiffs dismiss their claim against Bill de Blasio, as Mayor of the City of New York,

Richard Carranza, and against John Does 5, 6, 7 and 8, and restate the caption as stated above.

**PRELIMINARY STATEMENT**

      1.     This lawsuit is brought by the Chinese American Citizens Alliance Greater New

York ("CACAGNY") and five individual Asian-Americans, challenging the unconstitutional

policies and practices of Defendants New York City Department of Education ("DOE"), the New

York City Police Department ("NYPD"), and the NYPD School Safety Division, and seeks

damages for the abridgment of the constitutional rights of the individual Plaintiffs and other

Asian Americans, all of whom were prevented from attending a NYC School Board of Education

Town Hall meeting because of their ethnicity, and because of the views they wished to express.

## JURISDICTION AND VENUE

2.      Plaintiffs bring this action pursuant to 42 U.S.C. §1981 and 42 U.S.C. §1983 for

violations of their civil rights under the First, Fourth, and Fourteenth Amendments to the United

States Constitution and under the Constitution and laws of the State of New York.

3.      The case presents a federal question within this Court's jurisdiction under Article

III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(a)(4). This Court has

jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.5. This Court has

jurisdiction to declare the rights of the parties and to grant all further injunctive relief. The Court

has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because

several Plaintiffs reside in this District, and Defendants DOE, City are, for official purposes,

located in this district, and because the events occurred in this district.

6.      Plaintiffs filed a timely written Notice of Claim in accordance with N.Y. Gen.

Mun. Law § 50-e(1)(a). Over thirty days will have elapsed since the filing of that notice and this

matter is not settled or otherwise disposed of.[1]

## PARTIES

### Plaintiffs

7.      Plaintiff Chinese American Citizens Alliance Greater New York (CACAGNY) is

a membership organization which represents the interests of thousands of Asian-Americans

within the City of New York.  CACAGNY is a Section 501(c)(8) fraternal organization, is

---

[1] Various New York State Executive Orders tolled the statutory time period to file a Notice of Claim, from
March 20, 2020 through November 3, 2020.

incorporated in Delaware, and has its principal place of business within the County, City, and State of New York. CACAGNY's mission is to empower Chinese-Americans by advocacy for Chinese-American interests based on principles of fairness and equal opportunity, and guided by the ideals of patriotism, civility, dedication to family and culture, and the highest ethical and moral standards.

8.      Since its re-chartering in 2016, education has been a key focus of CACAGNY's advocacy on behalf of Chinese-American rights and an important issue for Asian-Americans generally. Education is also an area in which Asians face great discrimination. In New York City, for example, many Asian-Americans are recent immigrants; for Plaintiffs, as well as other Asian-Americans, public education is integral to their realizing the American dream on behalf of themselves and their children. The activities documented in CACAGNY's website demonstrate CACAGNY's deep and lasting commitment to fight for Chinese-American rights in public education.[2]

9.      Plaintiff Phillip Yan Hing Wong is President of CACAGNY, is Asian-American, and resides in the County of Queens, City and State of New York. Plaintiff Wong brings this action in his official and representative capacities as President of CACAGNY. Plaintiff Wong has three daughters, each of whom attended or is currently attending DOE public schools.

10.     Plaintiff Siu-Lin Linda Lam is Asian-American and resides in the County of Queens, City and State of New York. Plaintiff Lam's daughter attended Stuyvesant High School, one of the City's elite specialized high schools.

---

[2] See generally, CACAGNY's website at http://www.cacagny.org/home.html, and see, e.g., http://www.cacagny.org/20190626_firecarranza.html regarding CACAGNY's issues and concerns over public education in New York City.

11.     Plaintiff Lucas Liu is Asian-American and resides in the County, City, and State of New York. Plaintiff Liu has two children, both of whom currently attend DOE public schools.

12.     Plaintiff George Lee is Asian-American and resides in the County, City, and State of New York. Plaintiff Lee has four children, all of whom attended DOE public schools.

13.     Plaintiff Xuhui Ni is Asian-American and resides in the County of Kings, City and State of New York. Plaintiff Ni has two children, both of whom currently attend DOE public schools.

**<u>Defendants</u>**

14.     Defendant New York City Department of Education ("DOE") is organized pursuant to Article 52-A of the New York Education Law, which delineates the powers and duties of the city school district of the City of New York, and which is referred to and known as the DOE.

15.     At all times relevant, Defendant DOE, acting through its employees and agents, was responsible for the policy, practice, supervision, implementation, and conduct of all its employees and agents and their respective meetings, and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all DOE personnel. In addition, at all times relevant, Defendant DOE was and is responsible for enforcing the regulations of the DOE, and for ensuring that DOE personnel obey the laws of the United States, State of New York, and City of New York.

16.     Defendant City of New York is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. Defendant City has established and maintains the NYPD and the DOE as constituent departments or agencies of the City.

17.     At all times relevant, Defendant City, acting through the NYPD and the NYPD School Safety Division, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD and NYPD School Safety Division matters and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD and NYPD School Safety personnel. In addition, at all times relevant, Defendant City was and is responsible for enforcing the rules of the NYPD and NYPD School Safety Division, and for ensuring that the NYPD and NYPD School Safety Division personnel obey the laws of the United States, State of New York, and City of New York.

18.     Defendant Jason Marino is an employee of the DOE and works at the James Madison High School in Brooklyn, New York as an Assistant Principal. He is sued here in his individual capacity.

19.     Defendant John Doe No. 1 holds the title of Borough Safety Director for the DOE and is sued individually.

20.     Defendant John Doe No. 2 is the Senior Director of Community Partnerships for the DOE and is sued individually.

21.     Defendant Yergey Dym is a NYC Police Officer employed by the NYPD and is sued individually.

22.     Defendant NYPD School Safety Officer John Doe No. 3 at all relevant times was an employee of the City's NYPD School Safety Division. His identity remains unknown. He is sued here in his individual capacity.

23.     Defendant NYPD Police Officer John Doe No. 4 at all relevant times was an employee of the City's NYPD. His identity remains unknown. He is sued here in his individual capacity.

**NYPD and NYPD School Safety Division**

24.     Since 1998, the NYPD School Safety Division has authority to patrol the buildings and grounds of public schools operated by the DOE and to engage in policing activities with respect to those schools. Today, the NYPD School Safety Division, a branch of NYPD, includes over 5,000 School Safety Officers assigned to patrol specific school sites.

25.     Upon information and belief, the NYPD School Safety Division assigns between three and eight School Safety Officers to each New York City public middle school and high school. In addition, the NYPD School Safety Division includes at least 191 NYPD precinct-based police officers assigned to patrol public schools generally.

26.     NYPD School Safety Officers wear NYPD-issued uniforms and, as peace officers, maintain full authority to stop, frisk, detain, question, search, and arrest individuals both on and off school grounds. School Safety Officers do not carry firearms, but they do carry handcuffs. The NYPD School Safety Division's precinct-based police officers are armed and are indistinguishable from the NYPD police officers who patrol New York City streets, except that these officers are assigned to patrol New York City public schools.

27.     Upon information and belief, unlike other NYPD police officers who ordinarily receive six months of training prior to being deployed to City streets, NYPD School Safety Officers receive only fourteen weeks of training prior to being deployed to New York City public schools.

28.     Job qualifications for NYPD School Safety Officers differ from those for other NYPD police officers as well. Unlike other NYPD police officers, NYPD School Safety Officers are not required to have at least sixty hours of college credit or at least two years of military

6

service to qualify. On information and belief, NYPD School Safety Officers are also subjected to less rigorous medical, psychological, and character screenings than other NYPD police officers.

29.     Notwithstanding these differences, all members of the NYPD School Safety Division, including School Safety Officers, are law enforcement officers. It is not uncommon for NYPD School Safety Division Officers and NYPD police officers to act cooperatively with each other as they relate to NYC public schools. Here, and for example, on February 4, 2020, Defendants, including Police Officer Yergey Dyn, School Safety Officer John Doe No. 3, and Police Officer John Doe No. 4, were acting in cooperation with DOE employees Defendants Jason Marino, John Doe 1, and John Doe 2, and other ranking DOE employees, carried out the unlawful policies and practices of Defendants DOE, the NYPD, and the NYPD School Safety Division.

30.     Neither NYPD Police Officers nor NYPD School Safety Officers are employees of the DOE or are educators. However, and though DOE, principals and school administrators have no ultimate authority over NYPD Police Officers and NYPD School Safety Officers, DOE employees and agents often cooperate with NYPD police officers and NYPD school safety officers in enforcing municipal (DOE and City) policies and practices.

31.     The NYPD School Safety Division constitutes the fifth largest police force in the country. There are over 5,000 NYPD School Safety Division police personnel in public schools.

32.     Here, and for example, on February 4, 2020, Defendants, including Police Officer Yergey Dyn, School Safety Officer John Doe No. 3, and Police Officer John Doe No. 4, were acting in coordination with DOE employees Defendants Jason Marino, John Doe 2, and John Doe 1, and other ranking DOE employees, carried out the unlawful policies and practices of Defendants DOE, the NYPD, and the NYPD School Safety Division.

33.     Such joint DOE and City law enforcement actions made it impossible for Asian-Americans to be treated fairly and consistently with respect to their constitutional political free speech and free association rights when they engage in political speech outside or inside DOE public school buildings, most particularly on February 4, 2020.

## FACTS RELEVANT TO ALL CLAIMS

**A.     Chancellor Town Hall Meetings**

34.     As part of the DOE's outreach into New York City communities, the DOE Chancellor, who at the relevant time was Richard A. Carranza (hereinafter the "Chancellor"), conducts Town Hall meetings in coordination with the meetings of the City's 32 School District Community Education Councils ("CEC"). Indeed, one of the roles of each District CEC is to host a Town Hall meeting with the Chancellor during the school year.[3]

35.     CEC and Town Hall meetings are public and subject to the requirements of the open meetings law—*i.e.*, Article 7 of the New York Public Officers Law.

36.     The primary purpose of these Town Hall meetings is for the DOE Chancellor to engage in dialogue with the school district community—in particular, with school district parents and other community and education stakeholders—around issues relating to the education of the City's 1.1 million school children.

37.     It is not uncommon that before, during, or after Town Hall meetings, parents and/or other community members and stakeholders engage in political speech, including protests, rallies, picketing, and/or displaying signs or posters prior to, during, or following such meetings,

---

[3] See New York City Department of Education, "Roles and Responsibilities of Community Education Councils," at https://www.schools.nyc.gov/get-involved/families/education-councils/roles-and-responsibilities-of-education-councils.

outside and/or inside school buildings, to support or protest the DOE, City, Chancellor, and/or Mayor, or their respective or coordinated actions or policies.[4]

38. At times, Town Hall meetings can be contentious. On January 16, 2020, for example, the Chancellor scheduled a Town Hall meeting with CEC District 26, at a middle school in Bayside, Queens, and then abruptly left the meeting after several parents angrily confronted him about the issues of sexual assaults and violence occurring at Middle School 158, another District 26 middle school.[5]

39. In the past, the Chancellor also has attempted to avoid potentially contentious meetings altogether. In February 2020, for example, the DOE took steps to move a March Town Hall meeting scheduled in Chinatown, with CEC District 2, to Chelsea to avoid potentially critical Asian protestors. According to sources at the New York Post, Acting Deputy Chancellor Adrienne Austin "pushed for a location change" with CEC District 2.[6]

40. The Asian community's criticisms concerning certain of the DOE, the City, the Chancellor, and/or Mayor Bill de Blasio's education policies, were not new. In June 2018, for example, following the DOE and City's proposed plans to alter admissions policies to Specialized High Schools, ostensibly to increase minority enrollment, protests erupted within the

---

[4] See, e.g., Jenna Bagcal, "Northeast Queens leaders rip Carranza over claim of 'setup' at heated Bayside meeting," www.Qns.com, Jan. 29, 2020, at https://qns.com/2020/01/northeast-queens-leaders-rip-carranza-over-claim-of-setup-at-heated-bayside-meeting/ and Leslie Brody, "New York City Schools Chancellor Apologizes After Heated Exchanges," Wall Street Journal, Jan. 30, 2020, at https://www.wsj.com/articles/new-york-city-schools-Chancellor-apologizes-after-heated-exchanges-11580423115, evidencing parents and/or community members engaging in political speech at public DOE meetings with Chancellor Carranza.

[5] See, e.g., Selma Algar, "Outraged parents jeer DOE head Richard Carranza off the stage at Queens town hall meeting," New York Post, Jan. 17, 2020, at https://nypost.com/2020/01/17/outraged-parents-jeer-doe-head-richard-carranza-off-the-stage-at-queens-town-hall-meeting/.

[6] See, e.g., Selma Algar, "DOE wants to move Carranza town hall from Chinatown to Chelsea," New York Post, Feb. 13, 2020, at https://nypost.com/2020/02/13/doe-wants-to-move-carranza-town-hall-meeting-from-chinatown-to-chelsea/.

Asian community accusing the Chancellor and Mayor de Blasio (hereinafter the "Mayor") of pitting one minority group against another.[7]

41.     In December 2018, CACAGNY, along with others in the Asian community, sued the Chancellor and the Mayor alleging that their education policies concerning Specialized High School admissions were racially motivated and designed to achieve an unconstitutional racial balance at these schools.[8]

42.     From June 2019 through and including March 2020, members of CACAGNY, including some of the Plaintiffs, along with other Asian-Americans, engaged in active protests and picketing against Defendants DOE, City, the Chancellor, and/or the Mayor, before, during, and after education-related public meetings, including in 2019—on June 18 and 26, July 18 and 31, August 6, September 4, and in 2020—on January 7 and 16 and February 4, 2020, frequently displaying signs or posters containing political speech as described herein.[9]

43.     At or around school buildings, Town Halls, and/or City education-related meetings, Plaintiffs, along with other Asian-Americans, displayed politically expressive material, including signs, flyers, or posters. The content of the material included such slogans as "Fire Carranza for breeding racism, corruption and cronyism," "No Trickle Down School Racism," "Carranza Spreads Anti-Semitic and Anti-Asian Rhetoric," "Carranza is Silencing Parents," "Indict Carranza for Grade Fraud A RICO Probe," "Stop Spreading Hate," "Stop Spreading Hate

---

[7] See, e.g., Alex Zimmerman and Monica Desare, "De Blasio's specialized school proposal spurs outrage in Asian communities," Chalkbeat, June 5, 2018, at https://ny.chalkbeat.org/2018/6/5/21105142/de-blasio-s-specialized-school-proposal-spurs-outrage-in-asian-communities.

[8] See *Christa McCauliffe Intermediate School PTO, Inc. v. Bill de Blasio*, 18-CV-11657 (ER)(OTW) at https://pacificlegal.org/wp-content/uploads/2018/12/Complaint-filed-3-1552-1-1.pdf.

[9] See, e.g., CACAGNY's website at http://www.cacagny.org/ for information concerning certain protest activities.

in the name of Diversity," "Carranza is a racist! Needs to be fired!", "Asians Aren't Yellow," and "Stop All Bullying and Sexual Assault."

44.     Because of their public and vocal protests, the Asian-American community, which includes Plaintiffs, have been and are being targeted by Defendants DOE and Chancellor, including their employees and agents, for the purposes of discouraging and abridging their political speech by the manner and means described herein.

**February 4, 2020 Incident**

45.     On February 4, 2020, a Town Hall meeting was scheduled in conjunction with a CEC District 22 meeting at the James Madison High School, located at 3787 Bedford Avenue ("JMHS"), in the Sheepshead Bay neighborhood of Brooklyn, New York.

46.     At that meeting, DOE and the Defendants, including the individuals named and described herein, all of whom are employees and agents of the DOE by its administrative employees, City, along with members of the NYPD and/or NYPD School Safety Division, intentionally, purposefully, unlawfully, and unconstitutionally:

       a.  selectively refused Asian-Americans access to JMHS and the Town Hall meeting, while allowing non-Asians access to School buildings and public Town Hall meetings;

       b.  selectively searched Asian-Americans for signs or posters for the purposes of precluding Asian-Americans from entering JMHS and the Town Hall meeting and from bringing protest signs or posters into the Town Hall meeting, while not searching non-Asians and thereby allowing non-Asians to enter JMHS and the Town Hall meeting, and bring signs or posters into the Town Hall meeting;

11

    c.   selectively physically confronted, accosted, or manhandled Asian-Americans to intimidate or dissuade them from entering, and otherwise sought to prevent their gaining access to JMHS and attending the Town Hall meeting; and

    d.   selectively and successfully dissuaded Asian-Americans from entering JMHS and attending the Town Hall meeting being held inside.

47.    On February 4, 2020, at approximately 6:30 pm, the Chancellor was due to arrive and convene a Town Hall meeting at the James Madison High School building. The meeting was to be held in the School's auditorium. The public had been previously notified of the meeting and invited to attend.

48.    As was customary for most public meetings organized by the DOE and/or City, individuals who desired to speak at a Town Hall meeting were required to sign up on a list designated for that purpose, which was located inside the building and outside the auditorium.

49.    On February 4, 2020, persons desiring to speak at the Town Hall were only able to sign up starting at 6:00 pm and ending at 6:30 pm.

50.    At approximately 6:00 pm some of the Plaintiffs, along with other Asian-Americans and non-Asians, gathered for a rally outside the School building. Soon approximately 20 people were actively picketing near the entrance of the School building.

51.    The picketing group was advised by Defendants, including members of NYPD and NYPD School Safety, that they could not use a public address system and could not block the sidewalk. Plaintiffs along with the other members of the picketing group complied with the directions issued.

**Plaintiff Siu-Liu Linda Lam**

52.     Prior to the commencement of the Town Hall meeting at the School building, Plaintiff Siu-Lin Linda Lam entered the School building and then the school auditorium, where the Town Hall meeting was to occur, to save herself a seat. After putting her belongings down on a seat, she spoke with DOE Superintendent Julianna Bove and Acting Deputy Chancellor Adrienne Austin ("ADC Austin") before she returned outside to join the planned protest rally against the DOE and the Chancellor.

53.     Shortly before the scheduled 6:30 pm Town Hall meeting start time, Plaintiff Lam attempted to enter the School building. Two defendants—Jason Marino and John Doe 2—blocked her as she attempted to enter the School building. When Plaintiff Lam attempted to avoid them, Defendants Marino, Dyon and John Doe Nos. 3 and 4 again blocked Plaintiff Lam from proceeding.

54.     During the time Plaintiff Lam was stopped, blocked, and prohibited from entering the School building, Defendants Marino, John Doe 1, John Doe 2, and Dym and John Does Nos. 3 and 4 were allowing non-Asian individuals to walk by Plaintiff Lam and to enter the School building.

55.     During this time, Plaintiff Lam observed another Asian American woman, who was carrying a sign, being told by John Doe 1 to stop, and she was denied entrance to the School building. Plaintiff Lam, who was not holding any signs, again approached the School building door and was stopped again by Defendant Marino, who grabbed Plaintiff Lam's arm and pushed her away from the door. Defendants John Doe 2, and Dym and John Does No. 3 and 4 joined Defendant Marino and John Doe 1 and surrounded Plaintiff Lam. She was told to leave.

56.     Defendant NYPD School Safety Officer John Doe No. 4 confronted Plaintiff Lam and told her to follow him to leave; when she did not move, he went behind her and pushed her from the back. He continued to apply more pressure to Plaintiff Lam's back, causing her to experience physical pain. Plaintiff Lam had no choice but to step back out of the School building door, where she had been standing, and through which she was attempting to enter.

57.     Defendant John Doe 1 told Plaintiff Lam, other Plaintiffs, and other members of the picketing group, "No signs."

58.     A short time later, Plaintiff Lam again tried to enter the School building. Plaintiff Lam told Defendant John Doe 1 that she had no sign; when he said nothing, Plaintiff Lam felt compelled to open her coat to show him that she was not hiding a sign. At that point, she was finally let into the School building and to the Town Hall meeting.

59.     Once Plaintiff Lam gained access to the auditorium, she spoke with CEC 22 Superintendent Bove and told her that Asians were not being allowed into the meeting. Superintendent Bove did nothing except tell Plaintiff Lam to talk to ADC Austin.

60.     Plaintiff Lam was told by ADC Austin that as long as the signs had no sticks, signs were allowed into the Town Hall meeting.

61.     As a result of the physical confrontation with Defendants, Plaintiff Lam suffered physical injury, and suffered and still suffers mental anguish and emotional distress.

62.     Plaintiff Lam fears taking part in protests or rallies at, outside, or inside DOE public schools or attending other City education-related functions because she is Asian-American and therefore might encounter DOE personnel, or NYPD Officers, or NYPD School Safety Officers who may subject her to the same or similar unlawful treatment, including

stopping her, searching her, subjecting her to harassment and intimidation, and using coercion

and physical force against her in the future.

**Plaintiff George Lee**

63.     On February 4, 2020, when Plaintiff George Lee attempted to enter the School

building, he was physically impeded by Defendants St. John Doe 2, Dyon, and John Doe Nos. 3

and 4, who told him, "No signs."

64.     Plaintiff Lee advised Defendants John Doe 1 and NYPD School Safety Officer

John Doe No. 3 that he had no signs, but both Defendants still physically impeded Plaintiff Lee

from entering the School building.

65.     Plaintiff Lee, to get inside the School building and attend the Town Hall meeting,

felt compelled to open his coat and demonstrate to both Defendants John Doe 1 and St. John Doe

2 that he was not hiding any signs. Still, those Defendants denied Plaintiff entry by physically

blocking him from entering the School building even though he did not have any signs with him.

66.     Sometime later, for unknown reasons, Plaintiff Lee was allowed to enter the

School building and the Town Hall meeting.

67.     Plaintiff Lee, however, still fears that because he is Asian-American, DOE

personnel, NYPD police officers, and/or NYPD School Safety officers will accost him, harass

him, intimidate him, or coerce him should he engage in political speech outside or inside public

school buildings in conjunction with DOE Town Hall meetings or other City education

functions.

**Plaintiff Lucas Liu**

68.     On February 4, 2020, Plaintiff Lucas Liu arrived at the protest rally outside the School building a short time after 6:00 pm. He carried a handful of flyers containing political speech material he intended to hand out at the Town Hall meeting.

69.     After being informed by a protester that Asians were not being allowed entry because they were holding signs, Plaintiff Liu approached Defendant John Doe No. 3 and other Safety Officers, who were standing at the door to the School building, and asked them if they were denying entry to attendees because they were holding signs. These officers refused to answer Plaintiff Liu. Defendant NYPD School Safety Officer John Doe No. 3 told Plaintiff Liu that he [Liu] could speak with DOE staff because that is who the NYPD School Safety Officers "were supporting."

70.     Upon Plaintiff Liu's attempt to enter the School building, Defendant NYPD School Safety Officer John Doe No. 3 refused him entry because Plaintiff Liu was Asian and was carrying flyers. Defendant NYPD School Safety Officer John Doe No. 3 then asked an unidentified person where "Mr. John Doe 1" was. Plaintiff Liu assumed that "Mr. John Doe 1" was the DOE staff member whom Plaintiff Liu should talk to.

71.     After handing the flyers to another protester, Plaintiff Liu again attempted to enter the School building but was physically blocked from doing so by Defendant NYPD School Safety Officer John Doe No. 3. Plaintiff Liu held up his hands to show Defendant John Doe No. 3 that he had no signs or flyers.

72.     Defendant NYPD School Safety Officer John Doe No. 3 then allowed Plaintiff Liu into the School building because he was not carrying any political-speech material.

16

73.     When Plaintiff Liu entered the School building, and as he was searching for ADC Austin, he was informed about the actions of both Defendants Marino and John Doe 1 in impeding Asian-Americans' access to the School building.

74.     Plaintiff Liu approached and asked both Defendants Marino and John Doe 1 to identify themselves. Both refused to do so.

75.     Plaintiff Liu continued to search for ADC Austin. When he found her, Plaintiff Liu complained that Asians were being prevented from entering the School building and the Town Hall meeting.

76.     Plaintiff Liu feels and continues to feel heightened concern and distress that if he attends public school functions, he will be harassed, intimidated, accosted, or subjected to search by DOE employees, NYPD Police Officers, or NYPD School Safety Officers, particularly if he is engaged in political free speech.

**Plaintiff Xuhui Ni**

77.     On February 4, 2020, Plaintiff Ni attempted to enter the School building with a sign curled up in his hand. Plaintiff Ni was stopped in the vestibule and told that he could not bring a sign into the auditorium and to leave the School building.

78.     Plaintiff Ni went outside the School building and put the sign in his coat. He then attempted to enter the School building but was physically pulled from the line to enter the building by Defendant John Doe No. 3 for carrying a sign. Plaintiff Ni then placed his sign on the ground and again attempted to enter the School building. Defendant John Doe No. 3 reiterated to Plaintiff Ni that he could not come in. Other Asian-Americans who did not have signs were also not being allowed access to the School building.

79.     After he was denied entry, Plaintiff Ni asked Defendants DOE employee John

Doe 1 and John Doe No. 3 why he was not allowed in. Defendant NYPD School Safety Officer

John Doe No. 3 told Plaintiff Li that the sign was "a problem." Plaintiff Ni then tried to enter the

School building again and was told by Defendant NYPD School Safety Officer John Doe No. 3,

"Don't make trouble."

80.     Plaintiff Ni was directed to "open his jacket." After Plaintiff Ni complied, and

demonstrated he was not hiding a sign, he was then allowed to enter the School building and

attend the Town Hall meeting.

**Unknown Asian-American Male**

81.     Another Asian-American male, whose name is unknown, also tried to enter the

School building to attend the public Town Hall meeting, but he was prevented from doing so by

Defendants Jason Marino and John Doe 1. When he tried to get in, he was told by John Doe 1,

"You cannot bring in a sign." However, the man was not carrying a sign.

82.     Further, the Asian-American male pointed out to Defendants, including

Defendants Marino and John Doe 1, that Defendant City and DOE employees and agents were

allowing non-Asian individuals into the School building and the Town Hall meeting ahead of

and instead of him and other Asian-Americans, who were being excluded.

83.     Minutes later, the same Asian-American male again tried to enter the School

building through another door and was pushed out of the door by Defendant NYPD Police

Officer John Doe No. 4. He then attempted to enter through another door, but Defendant NYPD

School Safety Officer John Doe No. 3 pushed him away.

84. Dissuaded from entering the School building and attending the Town Hall meeting, the Asian-American male eventually left the area; he did not attend the Town Hall meeting.

**Additional Facts Relevant to All Plaintiffs**

85. As observed by Plaintiffs, it appeared from the events that transpired that at least Defendants Marino, John Doe 1, John Doe 2, and Dym, were "in charge" and were giving directions to NYPD uniformed Police Officers and NYPD School Safety Officers in the area.

86. Defendants Marino and Defendants John Doe 1, John Doe 2, and Dym, along with other City and DOE employees, were told by their supervisors or by someone "in authority" to prevent Asian-American protestors with and without signs or posters or other political-speech material from entering the School building and gaining access to the Town Hall meeting.

87. The individual defendants targeted and blocked Asians-Americans from entering the School building, regardless of whether they had signs, posters, or other political-speech materials.

88. Non-Asians were not denied entrance into the School building.

89. Non-Asians were not denied access to the Town Hall meeting.

90. Non-Asians were not searched outside or upon entering the School building.

91. Non-Asians were not denied the right to bring signs, posters, or other political-speech material into the School building and the Town Hall meeting.

92. Only Asian-Americans, because of their race, color, ethnicity, and/or national origin, were selectively denied entrance into the School building and the Town Hall meeting.

93. Only Asian-Americans, including Plaintiffs and other Asian-Americans, were selectively denied entry entrance into the School building and the Town Hall meeting because they were or were believed to be carrying signs, posters, or other political speech materials.

94. Only Asians-Americans, because of their race, color, ethnicity, and/or national origin, were selectively searched upon their respective attempts to enter the School building and the Town Hall meeting.

95. Only Asians-Americans, because of their race, color, ethnicity, and/or national origin, were selectively denied the right to bring signs, posters, or other political-speech material into the School building and the Town Hall meeting.

96. These unconstitutional and unlawful actions, which had occurred, but at a lesser level, at other Town Hall meetings in 2019 and 2020, constituted the policies and practices of Defendants DOE, City, and the Chancellor, as well as the NYPD and the NYPD School Safety Division, and were taken upon the instructions of Defendant DOE's employees and agents and at the behest of the DOE and/or City, including the Chancellor and/or the Chancellor's subordinates, with the knowing cooperation and assistance of the City's NYPD and/or NYPD School Safety Division.

97. By their actions as described herein, including by stopping, confronting, seizing, searching, physically touching, pushing, intimidating, coercing, and/or manhandling Plaintiffs, each of whom is Asian-American, Defendants, individually and jointly, purposefully and intentionally, violated Plaintiffs' United States and New York State constitutional rights by unconstitutionally and unlawfully:

      e. suppressing and/or prohibiting Plaintiffs from expressing their political views;

      f. suppressing and/or negating Plaintiffs' free speech rights;

g. suppressing and/or restricting Plaintiffs' freedom of association;

h. selectively stopping, seizing, searching, and/or otherwise manhandling Plaintiffs;

i. selectively harassing, intimidating, and/or coercing Plaintiffs to dissuade them from engaging in free speech or free association rights; and/or

j. selectively treating Plaintiffs differently from non-Asians,

in that Defendants prohibited, restricted, and/or limited Plaintiffs' access to JMHS and participation at the Town Hall meeting at which the Chancellor or his employees or agents, was scheduled to address the public.

98. At and/or outside JMHS, Defendants engaged in stopping Asian-Americans, subjecting them to searches, and/or physically impeding their access to JMHS pursuant to the official policy of Defendants DOE, City, the Chancellor, as well as the NYPD and NYPD School Safety Division. The stopping, searching, and/or impeding free speech, free association, protest activities of only Asian-Americans, including unlawfully impeding access to public facilities and meetings at which the Chancellor appeared constituted a municipal policy because these activities occurred prior to, at, and/or during earlier DOE events, including Town Hall meetings, and amount to an orchestrated and deliberate custom and usage of the DOE.

99. Because Defendants, individually and jointly, purposefully and intentionally engaged in selective actions against Asian-Americans only, Defendants discriminated against Plaintiffs because of their race, color, ethnicity, and/or national origin as Asian-Americans in violation of the Equal Protection Clause of the Fourteenth Amendment and the Equal Protection provision in the New York State Constitution.

100.     The policies and practices challenged here constituted at the time the official policy of the Defendant City and DOE, as well as the NYPD and the NYPD School Safety Division, and are utilized by the DOE, and their respective employees and agents, to effectively preclude, impede, and/or silence lawful and peaceful political free speech and protest activities by Asian-Americans at DOE scheduled public events, including meetings to be attended by the Chancellor and/or other DOE or City officials.

101.     The DOE Defendants' respective failures to appropriately train and supervise the members of the NYPD and the NYPD School Safety Division, along with employees or agents of the DOE and/or City in order to address a known pattern of unconstitutional stopping, seizing, searching, and/or physically impeding access of Asian-Americans only to public meetings, through the use of unconstitutional touching, shoving, pushing, intimidation, harassment, or other unnecessary and abusive exercises of coercion and/or physical force, amount to deliberate indifference to Asian-Americans' constitutional rights, thus constituting an official municipal policy.

102.     The actions complained of above were undertaken recklessly in disregard of the rights of Plaintiffs, including members of Plaintiff CACAGNY.

## DAMAGES

103.     Plaintiffs suffered severe emotional distress as a result of being discriminated against, humiliated, and assaulted by Defendants in order to deprive them of their free speech rights based on their national origin and viewpoint.

104.     Plaintiff Lam additionally suffered physical injury as a consequence of the actions taken against her, causing her pain and attendant emotional distress, to her injury in the sum of $100,000.

105.     Because of the reckless disregard of their rights, Plaintiffs are entitled to an award

of punitive damages.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
### (42 U.S.C. § 1983)

106.     Plaintiffs restate and incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

107.     Defendants the City, DOE, the Chancellor, along with the NYPD,  the NYPD

School Safety Division, Jason Marino, John Doe 1, John Doe 2, Yergey Dym, School Safety

Officer John Doe No. 3, and Police Officer John Doe No. 4, are liable pursuant to 42 U.S.C.

§ 1983 for enforcing and maintaining a policy, practice, and custom of unreasonably restricting,

impeding, and preventing Asian-Americans from exercising their political free speech rights in

violation of the First and Fourteenth Amendments to the United States Constitution.

108.     Plaintiffs' politically motivated protest rallies against the City, DOE, and the

Chancellor that occurred outside and inside School buildings and/or at Town Hall meetings were

speech and expressive activity related to matters of public concern. Such political speech is

therefore protected by the First and Fourteenth Amendments of the United States Constitution.

109.     Each individual Plaintiff's participation at protest rallies, together with other

members of the Asian-American community, some of whom are members of CACAGNY, is

protected association under the First and Fourteenth Amendments of the United States

Constitution.

110.     **Discrimination Based on Political Beliefs and Associations:** Defendants

violated the First and Fourteenth Amendments of the United States Constitution by barring and

preventing Asian-Americans from entering School buildings and Town Hall meetings because they were engaging in a protest rally outside School buildings and at Town Hall meetings against Defendants City, DOE, and the Chancellor because of their protected political beliefs and associations.

111. **Restriction on Political Expression:** Because of their unlawful actions, Defendants violated the First and Fourteenth Amendments of the United States Constitution because they unduly restricted Asian-Americans' ability to engage in core political expression and expressive activity, including participation in political rallies and protests.

112. **Content and Viewpoint Discrimination:** Defendants violated the First and Fourteenth Amendments of the United States Constitution because they discriminated against protected expression based on the expression's content and viewpoint in that Plaintiffs were taking part in a protest rally at the School building and before the Town Hall meeting, and were holding or carrying signs critical to the City, DOE, and the Chancellor. Because of the content and viewpoints expressed by Plaintiffs, Defendants abused their authority and acted to prevent Plaintiffs from entering School buildings and Town Hall meetings with signs, posters, and other political speech material expressing their views and opinions.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**EQUAL PROTECTION CLAUSE**
**(42 U.S.C. § 1983)**

113. Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

114. Defendants violated the Equal Protection Clause of the Fourteenth Amendment because they abused their government authority and engaged in speaker-based discrimination against Asian-Americans based on their race, color, ethnicity, and/or national origin.

24

115.   Defendants selectively targeted Plaintiffs for unlawful, selective treatment on the bases of their race, color, ethnicity, and/or national origin, namely, because they are Asian-Americans.

116.   Defendants selectively targeted Plaintiffs for unlawful, selective treatment on the bases of their race, color, ethnicity, and/or national origin, namely, because they are Asian-Americans, and because they exercised fundamental First and Fourteenth Amendment rights.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK STATE CONSTITUTION
## EQUAL PROTECTION
### (N.Y.S. Constitution Art. 1, § 11)

117.   Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

118.   Defendants violated Article I § 11 of the New York State Constitution because they abused their government authority and engaged in speaker-based discrimination against Asian-Americans based on their race, color, ethnicity, and/or national origin.

119.   Defendants selectively targeted Plaintiffs for unlawful treatment on the bases of their race, color, ethnicity, and/or national origin, namely because they are Asian-Americans.

120.   Defendants selectively targeted Plaintiffs for unlawful treatment on the bases of their race, color, ethnicity, and/or national origin, namely, because they are Asian-Americans, and because they were engaging in political speech.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE NEW YORK STATE CONSTITUTION
## FREEDOM OF SPEECH
### (N.Y.S. Constitution Art. 1, § 8)

121.   Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

25

122.     Defendants violated Article I § 8 of the New York State Constitution because they barred and prevented Asian-Americans from entering School buildings and Town Halls because they were engaging in a protest rally outside School buildings and at Town Halls against Defendants City, DOE, Mayor, and/or Chancellor Carranza based on their protected political beliefs, political speech, and associations.

123.     Further, Defendants violated Article I § 8 of the New York State Constitution because they unduly restricted Asian-Americans' ability to engage in core political expression and expressive activity, including participation in political rallies and protests.

### FIFTH CAUSE OF ACTION
### VIOLATION OF THE FOURTH AMENDMENT
### <u>UNLAWFUL SEARCH AND SEIZURE</u>
### 42 U.S.C. § 1983

124.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

125.     Defendants are liable for the unreasonable searches and seizures of Asian-Americans, including Plaintiffs, in violation of the Fourth Amendment of the United States Constitution.

126.     Defendants are liable for violating Plaintiff Siu-Lin Linda Lam's right under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures.

### SIXTH CAUSE OF ACTION
### VIOLATION OF NEW YORK STATE CONSTITUTION
### <u>UNLAWFUL STOPS AND SEARCHES</u>
### (N.Y.S. Constitution Art. 1, § 12)

127.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

128.     Defendants are liable for the unreasonable stops and searches of Asian-Americans, including Plaintiffs, in violation of Article I § 12 of the New York State Constitution.

129.     Defendants are liable pursuant to Article I § 12 of the New York State Constitution for the unreasonable stop and search of individually named Plaintiff Siu-Lin Linda Lam.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK STATE LAW**
**<u>ASSAULT AND BATTERY</u>**

130.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

131.     Defendants are liable for the assaults and batteries of Asian-Americans, including Plaintiffs, in violation of New York State law.

132.     Defendants are liable for the assault and battery of individually named Plaintiff Siu-Lin Linda Lam in violation of New York State law.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF STATE LAW—*RESPONDEAT SUPERIOR* LIABILITY**
**AGAINST DEFENDANTS CITY OF NEW YORK AND**
**<u>NEW YORK CITY DEPARTMENT OF EDUCATION</u>**

133.     Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

134.     Defendants City of New York and DOE are vicariously liable for the actions of their respective employees and agents who were on duty and acting within the scope of their respective employment when they engaged in the wrongful conduct described herein.

135.     Defendants, jointly and severally, while acting under color of state law, engaged in activities and conduct that constituted a policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, the NYPD and the NYPD School Safety Division, that violated the New York State and United States Constitutions.

27

136.    This policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, the NYPD and the NYPD School Safety Division, included stopping, searching, harassing, intimidating, coercing, and/or otherwise impeding Asian-Americans from engaging in political speech, including being prohibited from entering public buildings to attend public meetings, with and without political speech materials, which was evidenced by the actions and conduct of the individual Defendants as described herein.

137.    This policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, the NYPD and the NYPD School Safety Division, also included inadequate training and supervision of their respective employees and agents, including but not limited to the individual Defendants.

138.    By failing to adequately train and supervise their respective employees and agents, including but not limited to the individual Defendants, NYPD, NYPD School Safety Division, and Defendants City and DOE, tacitly condoned, authorized, or otherwise agreed to the actions and conduct engaged in by the individual Defendants as described herein.

139.    The policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, the NYPD and the NYPD School Safety Division, constituted deliberate indifference to the constitutional rights of Asian-Americans, including but not limited to the individually named Plaintiffs.

140.    The policy, custom, usage, practice, procedure, or rule of Defendants City, DOE, the NYPD and the NYPD School Safety Division, was the direct and proximate cause of the constitutional violations suffered by Asian-Americans, including but not limited to the individually named Plaintiffs.

141.     Defendants, individually and severally, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Asian-Americans, including but not limited to Plaintiffs.

## JURY TRIAL DEMANDED

142.     Plaintiffs request a jury trial on all those claims permitting same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Declare that the policies and practices of the City, DOE, the NYPD and the NYPD School Safety Division, to selectively stop, search, accost, harass, intimidate, coerce, and/or otherwise impede Asian-Americans attending NYC School Board meetings, absent probable cause of criminal activity, violated Plaintiffs' federal and state constitutional rights;

B.     Declare that Defendants violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights of the United States Constitution and the New York State Constitution;

C.     Declare that Defendants unlawfully discriminated against Plaintiffs as Asian-Americans because of their race, color, ethnicity, and/or national origin;

D.     Declare that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by unlawfully and without justification or cause stopping, searching, harassing, intimidating, coercing, and otherwise impeding Plaintiffs' entrance into public buildings and meetings because of Plaintiffs' race, color, ethnicity, and/or national origin;

E.     Permanently enjoin Defendants City, DOE, NYPD and the NYPD School Safety Division, and  their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from any further violations of Plaintiffs' and other Asian-Americans' constitutional, statutory, and common law rights, including their selectively searching, prohibiting, accosting, harassing,

intimidating, coercing, and/or impeding any other Asian-Americans at public rallies and during picketing, and from entering public buildings and public meetings, including Town Halls meetings, with or without signs, posters, and/or other material expressing political speech absent probable cause of criminal activity;

F.     Award Plaintiff Siu-Lin Linda Lam full and fair compensatory damages against Defendants for the unlawful actions described in this Complaint;

G.     Award compensatory damages to all Plaintiffs for the unlawful and forceful violation of their First Amendment and NYS Constitutional rights.

H.     Award punitive damages against the Defendants, jointly and severally in an amount to be determined by a jury;

I.     Award Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees in this action under 42 U.S.C. §1988; and

J.     Grant any other and further relief as this Court may deem necessary, just, or proper.

Dated: New York, New York
       May 8, 2024

Respectfully submitted,

**ADVOCATES FOR JUSTICE**
*Attorneys for Plaintiffs*

*Arthur J. Schwartz*

Arthur Schwartz
225 Broadway, Suite 1902
New York, New York 10007
Tel.: (212) 285-1400, ext. 102
Fax:  (212) 285-1410
**Cell: (917)923-8136**
aschwartz@afjlaw.com