UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHINESE AMERICAN CITIZENS ALLIANCE GREATER
NEW YORK, et al.,

                   Plaintiffs,

          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20-cv-08964 (LAK) (GS)

**USDS SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: __9/29/25__

**MEMORANDUM OPINION**

Appearances:

Arthur Z. Schwartz
ADVOCATES FOR JUSTICE, CHARTERED ATTORNEYS

*Attorney for Plaintiffs*

Kimberly L. Roc
Assistant Corporation Counsel
MURIEL GOODE-TRUFANT
CORPORATION COUNSEL OF THE CITY OF NEW YORK

*Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

       In June 2018, the New York City Department of Education (the "DOE") revised its admission policy for several of its specialized high schools, purportedly to achieve a more diverse pool of applicants.[1]  The policy prompted criticism for allegedly discriminating against high-achieving Asian-American students.  This action arises from a so-called Town Hall meeting held

---

[1]    For further background, *see* Dkt 141 ("R&R") at 2–25.

2

by the DOE on February 4, 2020 at James Madison High School (the "School") in Brooklyn, New York, which was intended to facilitate a dialogue between members of the community and the DOE Chancellor.  At this particular meeting, the DOE implemented a blanket ban on signs.

Plaintiffs Chinese American Citizens Alliance Greater New York ("CACAGNY"), Phillip Yan Hing Wong, Siu-Lin Linda Lam, George Lee, Xuhui Ni, and Lucas Liu claim that Asian-Americans were selectively searched for signs or posters for the purpose of refusing them entry to this meeting.  They bring claims under 42 U.S.C. § 1983 against the DOE, the City of New York (the "City"), Police Officer Yergey Dym, Assistant Principal Jason Marino, and four John Does for alleged violations of their First Amendment right to free speech, Fourteenth Amendment right to equal protection, and Fourth Amendment right to be free from unreasonable search and seizure.  Plaintiffs bring claims also under state law for parallel alleged violations of the New York State Constitution, for assault and battery, and under the doctrine of respondeat superior.

The parties cross-moved for summary judgment.  Defendants moved for summary judgment dismissing the first amended complaint, and plaintiffs cross-moved for partial summary judgment as to their First Amendment claim.  In a thorough report and recommendation ("R&R"), Magistrate Judge Gary Stein recommended that defendants' motion for summary judgment be granted as to plaintiffs' First Amendment claim and the corresponding claim under the New York Constitution, that defendants' motion for summary judgment be granted in part and denied in part as to plaintiffs' Fourteenth Amendment claim and the corresponding claim under the New York State Constitution, and that defendants' motion for summary judgment be granted dismissing plaintiffs' remaining claims.[2]

---

[2] *See* Dkt 141 at 2.

*Plaintiffs' Objections*

Plaintiffs object to the R&R's recommendation that their First Amendment claim be dismissed.[3]  They argue that strict scrutiny applies to the ban on signs and that there is a genuine issue of material fact as to the reasonableness of the sign restriction.  The plaintiffs' arguments are unpersuasive.

Speech restrictions on publicly owned property are analyzed according to a forum-based approach.[4]  "[F]ora for expression are classified into four categories, which fall along a spectrum extending from those deserving the greatest constitutional protection to those deserving the least constitutional protection: (1) the traditional public forum; (2) the designated public forum; (3) the limited public forum; and (4) the non-public forum."[5]

As an initial matter, the R&R correctly concluded that the Town Hall was a limited public forum.[6]  A limited public forum "exists where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects."[7]  Here, the School was opened for the limited purpose of discussing particular subjects — specifically those connected to the DOE — rather than for general public assembly and debate.  Thus, the

---

[3]

    *See* Dkt 150.

[4]

    *See Tyler v. City of Kingston*, 74 F.4th 57, 61 (2d Cir. 2023).

[5]

    *Id.* (internal quotation marks omitted) (cleaned up).

[6]

    *See* Dkt 141 at 33—36.

[7]

    *See Hotel Emps. & Rest. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 545 (2d Cir. 2002) (internal quotation marks omitted).

4

limited public fora standard applies.

> "In a limited public forum, the government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre. For expressive uses not falling within the limited category for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable. Strict scrutiny is accorded only to restrictions on speech that fall[] within the designated category for which the forum has been opened.  Otherwise, such restrictions are subject to only minimal constitutional scrutiny."[8]

Plaintiffs argue that strict scrutiny is the appropriate standard to review the ban on signs.[9]  However, plaintiffs disregard the key fact that the sign ban was a facially content-neutral restriction on the form or manner of speech.  The ban on signs did not restrict *what* the plaintiffs could say; it restricted *how* they could say it.

The Second Circuit addressed this issue directly in *Tyler v. City of Kingston* when it considered a First Amendment challenge to a prohibition of signs and posters at a public meeting. It noted that "the application of strict scrutiny [to restrictions on the form or manner of speech, such as a prohibition on signs in a limited public forum,] would undermine the legal principles governing limited public fora — that such fora are subject to reduced judicial scrutiny — and would appear to apply a higher level of scrutiny than that imposed on time, place, or manner restrictions in public fora," which ordinarily are subject to intermediate scrutiny.[10]  In a limited public forum, such as this particular meeting, the government is "permitted to restrict the form or manner of speech offered by members of the public, even if such speech addresses the topic or agenda of that forum," and

---

[8]  *See Tyler*, 74 F.4th at 61–62 (internal quotation marks and citations omitted) (cleaned up).

[9]  *See* Dkt 150 at 16.

[10]  *See Tyler*, 74 F.4th at 63; *see e.g.*, Int'l Action Ctr. v. City of New York, 587 F.3d 521, 527 (2d Cir. 2009).

5

"courts need only assess whether the restrictions are reasonable and viewpoint neutral."[11] Accordingly, the ban on signs at this meeting needed only to be reasonable and viewpoint neutral.

Plaintiffs argue also that there is genuine issue of material fact as to the reasonableness of the ban on signs.

> "In a limited public forum, the reasonableness analysis turns on the particular purpose and characteristics of the forum and the extent to which the restrictions on speech are reasonably related to maintaining the environment the government intended to create in that forum. To survive First Amendment scrutiny, the restriction need not be the most reasonable or the only reasonable limitation imaginable, but simply consistent with the government's legitimate interest in preserving the property for the use to which it is lawfully dedicated. Significantly, the existence of alternative channels of communication is a relevant factor in assessing the reasonableness of a restriction on speech in a limited public forum."[12]

As the Second Circuit explained in *Tyler*, "courts can take notice of government interests that 'ring[] of common-sense.'"[13] "And many courts have recognized that preventing disruptive activity is a legitimate and common-sense government interest that can justify restrictions on speech in limited public fora."[14]

It is self-evident that the City has an interest in holding efficient and orderly meetings. In *Tyler*, the Second Circuit stated that a prohibition on signs can further this common-

---

[11]

*Tyler*, 74 F.4th at 63.

Plaintiffs' suggestion that the original function of the School itself — that is, as a public teaching facility — is relevant to this analysis is meritless. The purpose of the limited public forum created at the Town Hall was to discuss DOE issues.

[12]

*Id.* (internal quotation marks and citations omitted).

[13]

*Id.* at 64 (quoting *Hotel Emps.*, 311 F.3d at 554).

[14]

*Id.*

sense interest, noting that signs and posters may be "visually disruptive and interfere[] with the decorum of [] meetings."[15]  Moreover, in a limited public forum, the government is not required to choose the least restrictive means to further its interest.[16]  Nor were plaintiffs prevented from expressing their views at the meeting or through protest activity outside the School.  Thus, the restriction served a common-sense purpose, and plaintiffs had alternative channels to communicate their views.  Accordingly, the restriction was reasonable.

> Plaintiffs contend also that there is an issue of material fact as to "whether the restrictions on signs were neutral or neutrally enforced."[17]  They point to plaintiffs' testimony that the sign ban was enforced in a discriminatory manner.  Specifically, plaintiffs testified that non-Asians with signs were allowed to enter the venue.  However, this testimony does not negate the reasonableness of the sign restriction, and it likewise does not support an argument that the sign ban was discriminatory as to viewpoint.  Indeed, plaintiffs do not point to any evidence that the sign ban was enforced unevenly based on the content of the signs.[18]

> Accordingly, the Court adopts the R&R's recommendation that defendants' motion

---

[15]   *See id.* at 65.

[16]   *See id*.

[17]   Dkt 150 at 19.

[18]   In their objection to the R&R, defendants argue that video evidence demonstrates that a non-Asian protestor wearing a shirt bearing the phrase "FIRE CARANZA" was denied entry to the School.  *See* Dkt 149 at 6–7.  If this denial were based on the content of that message, it would support an argument that the ban was viewpoint-discriminatory. However, the conversation captured on the recording undercuts this narrative because, as the R&R points out, the DOE personnel asked the protestor why his shirt was not sufficient to express his message, suggesting that personnel were attempting to enforce the blanket ban on signs rather than target specific messages conveyed.  *See* Dkt 141 at 48.

for summary judgment dismissing plaintiffs' First Amendment claim and corresponding New York State Constitution claim be granted and that plaintiffs' cross-motion for summary judgment as to liability on these claims be denied.

*Defendants' Objections*

Defendants object to the R&R's recommendation to deny summary judgment as to plaintiffs' Equal Protection claim under a theory of selective enforcement and discriminatory application.

To prevail on an Equal Protection claim based on selective enforcement, "a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations.'"[19]

Defendants argue that plaintiffs do not raise a triable issue of fact as to differential treatment and that video evidence directly rebuts plaintiffs' allegations of differential treatment. However, as the R&R points out, "Wong and Lam testified that they personally observed non-Asian attendees allowed into the meeting with signs,"[20] and "Lee and Liu testified that Lee and other Asian attendees were stopped and not allowed to enter the School even though they did *not* have signs."[21] If credited, plaintiffs' testimony "would support a finding that non-Asian attendees were treated

---

[19] *See Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).

[20] *See* Dkt 141 at 61.

[21] *See id.* at 63 (emphasis in original).

differently from Asian attendees despite being similarly situated in all material respects."[22]  And although the video evidence may appear inconsistent with this testimony, it does "not capture the entirety of the relevant events" and therefore does not conclusively rebut the testimony.[23]  As the R&R noted, it is not the Court's role to make credibility determinations on a motion for summary judgment.  While the Court agrees that the video evidence does not appear to support plaintiffs' characterizations of the events, the testimony is not "so replete with inconsistencies and improbabilities that no reasonable juror could undertake the suspension of disbelief necessary to credit [it]."[24]

Defendants suggest also that, even if the plaintiffs were subject to differential treatment, the temporary period of differential treatment would not rise to level of a "deprivation of constitutional deprivation."[25]  However, this argument was not raised to the magistrate judge, and it therefore is deemed waived.[26]  In any case, although the Court need not address this argument, a

---

[22]

*See* Dkt 141 at 61–62.

[23]

*See id.* at 62.

Defendants argue that the video evidence shows "an apparently non-Asian protestor wearing a shirt bearing the phrase 'FIRE CARANZA' demanding entry on behalf of himself and other protestors."  *See* Dkt 149 at 6.  They contend that this rebuts plaintiffs' allegations of differential treatment.  However, the fact that one non-Asian individual is featured arguing with DOE personnel does not prove conclusively that Asian individuals were not disproportionately stopped and denied entry at the School.  Additionally, he appears to be doing so on behalf of Asian individuals.

[24]

*See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005).

[25]

*See* Dkt 149 at 5 (quoting *Lynch v. City of New York*, 952 F.3d 67, 77–78).

[26]

*See Denver v. Berryhill*, No. 19cv1312 (AJN)(KHP), 2020 WL 2832752, at *1 (S.D.N.Y. June 1, 2020).

number of courts have concluded that the *de minimus* exception does not apply to the Equal Protection Clause.[27]

       Accordingly, the Court adopts the R&R's recommendations in full. Defendants' motion for summary judgment (Dkt 107) dismissing the amended complaint is granted in all respects except that it is denied as to (a) plaintiffs' second cause of action alleging violation of their equal protection rights under the Fourteenth Amendment, to the extent that claim is based on theories of selective enforcement and discriminatory application, and (b) plaintiffs' third cause of action for violation of their equal protection rights under the New York State Constitution, except to the extent that claim is brought against the City and DOE under a theory of *respondeat superior*. Plaintiffs' cross-motion for partial summary judgment (Dkt 119) is denied.

       SO ORDERED.

Dated:      September 29, 2025

                                          Lewis A. Kaplan
                                United States District Judge

---

[27] *See* Dkt 141 at 65 n. 19 (collecting cases).